**Herbert Phillip SCHLANGER, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America et al., Defendants-Appellees.**

**No. 76–1930.**

United States Court of Appeals, Ninth Circuit.

Sept. 11, 1978.

Rehearing and Rehearing En Banc Denied Nov. 15, 1976.

---

Herbert Phillip Schlanger, in pro. per. (argued), of Hansell, Post, Dorsey & Brandon, Atlanta, Ga., for plaintiff-appellant.

John F. Flynn, Asst. U. S. Atty. (argued), Phoenix, Ariz., for defendants-appellees.

Before KILKENNY, Senior Circuit Judge, TRASK, Circuit Judge, and HAUK, District Judge.*

HAUK, District Judge:

## I. BACKGROUND

This is an appeal from an order of the District Court for the District of Arizona, Hon. Carl A. Muecke, dismissing plaintiff-appellant Schlanger's complaint on the grounds of *res judicata* and failure to state a claim upon which relief could be granted.

## II. STATEMENT OF FACTS

In December 1962, Herbert Schlanger enlisted in the United States Air Force (USAF) for a period of 4 years and began his service. In 1965, Schlanger applied for entrance into the Airman's Education and Commissioning Program (AECP), a USAF program providing undergraduate education and officer training leading to an officer's commission. After the USAF accepted Schlanger into the AECP, it arranged his admission into and assigned him for AECP participation at Arizona State University (ASU). As part of the program, Schlanger received a discharge on December 8, 1966 and reenlisted, on December 9, 1966, for a period of 6 years.

In January 1966, Schlanger enrolled in his courses at ASU under the auspices of the Air Force Institute of Technology (AFIT), projected, with his AFIT advisers, a graduation date of June 1968, and began his studies. During the fall of 1967, Schlanger became ill and received several grades of "incomplete" and had to revise his projected graduation date to August 1968.

In early 1968, Schlanger became actively involved in an organization known as the Arizona State University Civil Rights Board. This group focused its efforts primarily, at that time, on correcting perceived racial discrimination in housing in that area and received considerable local publicity regarding its efforts during March of 1968.

On April 2, 1968, an AFIT liaison officer at ASU summoned Schlanger to appear before him at a "counselling" session. While USAF contends that the conference related to Schlanger's absences from his classes and failure to remove his incompletes, Schlanger contends that the officer denounced Schlanger's civil rights activities, told him such activities were inappropriate for an officer trainee, and informed him he was "getting in with bad groups."

On June 17, 1968, by letter, Schlanger was notified of his removal from AECP for demonstrating a "lack of officer potential."

---

* Hon. A. Andrew Hauk, United States District Judge for the Central District of California, sitting by designation.

Schlanger sought clarification of this removal and eventually was informed that his absences from classes were the key factor in demonstrating his lack of officer potential. USAF officers denied Schlanger's subsequent requests to see the Report of Inquiry which had been prepared on the matter and also denied his requests for a hearing.

Soon thereafter, USAF reassigned Schlanger to a post in Georgia and later sent him to a post in Iceland. Schlanger's requests for a discharge or reinstatement in AECP were denied at all levels of USAF authority. Eventually, USAF permitted Schlanger to return to ASU to complete his undergraduate studies at his own expense. He did so in 1969 and then began litigation seeking his discharge. After various legal proceedings, the USAF, in February 1972, discharged Schlanger, about 6 months before the expiration of his scheduled term of service and about 1 week before a scheduled oral argument before the Court of Appeals for the District of Columbia Circuit.

Schlanger, who has represented himself throughout his various actions, attended law school after his discharge and is now a member of the Arizona bar. He continues to argue his own case here.

### III. SUMMARY OF PRIOR LITIGATION

#### A. *First Arizona Action*

On August 27, 1969, Schlanger filed a petition for a writ of habeas corpus in the District Court for the District of Arizona seeking his discharge from USAF. The District Court denied the petition and this Court remanded the case. The District Court again denied the petition and this Court then affirmed the dismissal. The Supreme Court granted certiorari, 400 U.S. 865, 91 S.Ct. 110, 27 L.Ed.2d 103 (1970), and affirmed, *Schlanger v. Seamans,* 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971). In an opinion written by Justice Douglas, the Court found that the District Court in Arizona lacked jurisdiction over the defendants—the Secretary of the Air Force, the Commander of the USAF base in Georgia,

and the Commander of the USAF ROTC program at ASU—because the Secretary of the USAF and the base commander were not residents of Arizona and not amenable to process there and because the ROTC Commander was not in the chain of command above Schlanger. 401 U.S. at 488–90, 91 S.Ct. 995. The Court expressly reserved the question of whether habeas corpus would be an appropriate remedy if, as Schlanger claimed, the USAF had breached his contract of reenlistment. *Id.* at 492, 91 S.Ct. 995.

#### B. *Georgia Action*

Schlanger then filed a habeas corpus action in the Middle District of Georgia, where he was then officially stationed, on July 9, 1970. The District Court there in Georgia dismissed the petition for Schlanger's failure to exhaust his intraservice administrative remedies and the Court of Appeals for the Fifth Circuit dismissed Schlanger's appeal.

#### C. *District of Columbia Action*

On April 28, 1971, Schlanger filed a petition for a writ of habeas corpus in the District Court for the District of Columbia. In the petition, Schlanger complained that his removal from the AECP violated due process; was arbitrary, capricious, and unreasonable; violated USAF regulations; was without factual basis; violated his first amendment rights; and breached his reenlistment contract. The petition named the Secretary of the Air Force, its Chief of Staff, and four other USAF officers as respondents. The petition also sought, in the alternative to habeas corpus relief, a writ of mandamus, a declaratory judgment of the parties' rights and duties under the contract of reenlistment, and relief for breach of contract.

The District Court in the District of Columbia issued an order to the respondents, ordering them to show cause why the petition should not be granted. The respondents answered the order to show cause by arguing that the reenlistment contract did

not obligate the USAF to place Schlanger in any particular duty assignment; that Schlanger's instructors had reported his absences from scheduled classes; that Schlanger's failure to attend all scheduled classes was, under applicable regulations, a proper ground for removal from the AECP; and that the investigation and removal procedures followed the relevant USAF regulations. On July 8, 1971, the District Court dismissed the petition and, after the District Court Judge also denied a motion for reconsideration, Schlanger then appealed.

On February 24, 1972, the Court of Appeals for the District of Columbia Circuit, in a per curiam memorandum, dismissed the appeal as moot in light of the fact that the USAF had discharged Schlanger. The discharge occurred about 1 week before a scheduled oral argument before that Court of Appeals and about 6 months prior to the expiration of Schlanger's 6-year term of service. Schlanger petitioned the Supreme Court for a writ of certiorari, which that Court denied on October 19, 1972. *Schlanger v. Seamans,* 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 107 (1972).

#### D. *Second Arizona Action*

Schlanger then, on July 18, 1973, filed the complaint which is the subject of this appeal. In this complaint, filed in the District of Arizona, Schlanger makes six claims for relief: (1) his removal from the AECP violated various of his constitutional rights; (2) the defendants induced a breach of his reenlistment contract; (3) the defendants breached his reenlistment contract; (4) the defendants unlawfully detained, arrested, and restrained him in Arizona; (5) the defendants unlawfully detained, arrested, and restrained him in Georgia; and (6) the defendants unlawfully detained, arrested, and restrained him in Iceland. The complaint names the United States, the Secretary of the Air Force, the Chief of Staff, and various officers of the USAF and AFIT as defendants. Schlanger's complaint asserts several bases of jurisdiction, including the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; the Administrative Proce-

dure Act, 5 U.S.C. § 701 *et seq.*; the mandamus statute, 28 U.S.C. § 1361; the Civil Rights Act, 28 U.S.C. § 1343; the Federal Tort Claims Act, 28 U.S.C. § 1346; existence of a federal question, 28 U.S.C. § 1331; and 28 U.S.C. § 1357. In his prayer for relief, Schlanger seeks a declaratory judgment that his removal from AECP was unlawful for various reasons and that the removal from AECP breached his reenlistment contract; expungement of the reference to the removal from his USAF records; $300,000 damages for breach of contract; and $1,000 per each day of alleged unlawful detention.

On November 5, 1973, the District Court, Hon. Carl A. Muecke presiding, dismissed the complaint as *res judicata.* On January 5, 1975, however, this Court, in a brief, two-paragraph per curiam memorandum "remanded" the case to the District Court. In its memorandum, the Court "suggested" that the parties brief the District Court on the basis of its jurisdiction and also suggested that the parties present a full record of the District of Columbia proceedings to the District Court.

On remand, the defendants did present a copy of the proceedings in the District of Columbia, including the government's response to the order to show cause, to the District Court. The District Court then, on March 12, 1976, granted the defendants' motion to dismiss the complaint. In his written order of dismissal, the District Court Judge stated two reasons for the dismissal. First, he found that the only issue before the court—plaintiff's contractual claim—had already been decided by the District of Columbia courts and principles of *res judicata* therefore barred this action. Second, he found that the complaint failed to state a claim because federal courts lack jurisdiction to review internal military matters. On April 5, 1976, the District Judge denied a Rule 59 motion to alter the judgment. This appeal followed.

#### IV. ISSUES ON APPEAL

On appeal, Schlanger challenges both reasons stated in the District Court's order of

dismissal. Thus, he raises two issues on appeal:

(1) Does the doctrine of *res judicata* bar this action?

(2) Does the complaint state a claim upon which relief could be granted?

Because we agree with the District Court that the complaint fails to state a claim upon which relief could be granted, we affirm the District Court on that basis and find it unnecessary to reach the *res judicata* issue.

## V. DISCUSSION

The District Court's order dismissing the complaint specified that the complaint failed to state a claim because the complaint raised nonreviewable internal military matters. The District Court based this finding on the concept that the federal courts should hesitate to review internal military affairs and relied primarily upon a decision of the Fifth Circuit, *Mindes v. Seamans,* 453 F.2d 197 (5th Cir. 1971).

In *Mindes v. Seamans,* 453 F.2d 197 (5th Cir. 1971), the Court of Appeals for the Fifth Circuit considered the question of the scope of review a federal court should use in reviewing military matters. After reviewing precedent in the area, the court set forth a two-part test for the exercise of jurisdiction by federal courts over military affairs. *First,* the plaintiff must allege either the deprivation of a constitutional right or the violation of applicable statutes or regulations and then allege exhaustion of available intraservice remedies. 453 F.2d at 201. *Second,* a district court faced with allegations satisfying the first part of the test must then examine and balance the following four factors to determine whether, as a policy matter, review of the military decision in question is proper. These factors are: (1) the nature and strength of the plaintiff's challenge to the military decision; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Id.*

The plaintiff's allegations meet the *first* part of the *Mindes* test. The District Court's order in this case states, however, that, after considering the four factors in the *second* part of the test, "this Court finds that those factors in this case militate against a finding of reviewability." The District Court's decision on this point is correct because this plaintiff's alleged injury, when compared, for example, to a decision to send a member of the armed forces into combat duty, or a decision to discharge a soldier dishonorably, is indeed so slight as to be negligible, while the discretion the military should possess in deciding whom to select for officers should be unfettered. Nevertheless, we suggest that there is a simpler and perhaps sounder manner of handling this issue by considering it in the light of recent decisions of this Circuit.

In several decisions, all in the last eight years, this Court has discussed the reviewability of military decisions. In these cases, this Court has specifically held that, while the U. S. judiciary may review armed forces' orders of discharge, *Denton v. Secretary of the Air Force,* 483 F.2d 21, 24 (9th Cir. 1973) *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974), federal courts should not review internal military decisions such as duty orders or duty assignments. *Covington v. Anderson,* 487 F.2d 660, 664–65 (9th Cir. 1973); *Denton, supra,* at 24; *Arnheiter v. Chafee,* 435 F.2d 691 (9th Cir. 1970) (per curiam). *See also Correa v. Clayton,* 563 F.2d 396, 399 (9th Cir. 1977).

In the seminal case in this Circuit, *Arnheiter v. Chafee, supra,* a Navy officer sought review of an order relieving him from command of a destroyer. The District Court, finding that the Navy's decision was internal, conformed to the Navy's regulations, and fell within the bounds of due process, granted a judgment of dismissal. *Arnheiter v. Ignatius,* 292 F.Supp. 911 (N.D. Cal.1968). This Court then affirmed "so much of the district court's opinion as holds that the federal courts have no jurisdiction." 435 F.2d at 692. In its opinion, the Court quoted a famous passage from the

Supreme Court decision of *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953) ("judges are not given the task of running the Army. . . .").

Although refining it slightly, the later cases in this Circuit continue to affirm the *Arnheiter* rule. In *Denton, supra,* a former USAF captain sought a declaratory judgment that his general discharge was unlawful and the District Court granted summary judgment against him. This Court reaffirmed *Arnheiter* but distinguished it on the ground that the plaintiff in that case merely sought review of a duty order while the plaintiff in *Denton* sought a review of a discharge, which involved allegations of a much greater deprivation of the plaintiff's rights. The Court then proceeded to assume jurisdiction and review the problem of whether the USAF followed its own regulations in discharging Denton. Finding that it did so, the Court affirmed.

In *Covington v. Anderson, supra,* our Court's latest opinion in this area, the plaintiff sought review of his suspension from flight status as a jet pilot with the Oregon Air National Guard. The District Court granted summary judgment for the defendants and this Court affirmed, reaffirming *Arnheiter,* quoting again from the Supreme Court language of *Orloff v. Willoughby,* and concluding that the matter should not be subject to judicial review. The opinion relied heavily upon the following language from the *Orloff* case:

> The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

487 F.2d at 665, *quoting Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

In this case, plaintiff-appellant Schlanger seeks review of a decision of the USAF to remove him from the AECP and reassign him elsewhere. This military decision resembles the military decisions in *Arnheiter* and *Covington* in that it essentially involves a duty assignment. It does not fall within the scope of the *Denton* case because, while Schlanger may suffer certain collateral consequences from having the removal remain in his USAF record, the military decision to remove him from the AECP does not subject him to consequences as serious as those to which the plaintiff in *Denton* was allegedly subject. Therefore, we find that the USAF decision to remove Schlanger from the AECP was an internal military decision regarding a duty order not subject to judicial review in the federal courts.

Accordingly, the order of the District Court dismissing the complaint is AFFIRMED.