801 F.2d 1135
 Major Nelson SEBRA, Plaintiff-Appellant,
v.
William NEVILLE, 144th FIW Commander, California Air
National Guard; Willard Shank, Adjutant General, California
National Guard; Robert Thrasher, Assistant Adjutant
General, California National Guard, Defendants-Appellees.
 No. 85-2697.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 13, 1986.
Decided Oct. 3, 1986.
 
 Barry J. Bennett, Joby Dupuis, Bennett & Sharpe, Fresno, Cal., for plaintiff-appellant.
 James White, Asst. U.S. Atty., Fresno, Cal., Paul Dobson, Asst. Atty. Gen., Sacramento, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before WRIGHT, FARRIS, Circuit Judges, and RHOADES,* District judge.
 FARRIS, Circuit Judge:
 
 
 1
 Major Nelson Sebra appeals from the district court's order denying his application for a preliminary injunction enjoining the California National Guard from transferring him from a Fresno base to a Riverside base. He also appeals from the district court's grant of summary judgment to the three superior officers who Sebra alleges were responsible for his transfer. Sebra sued the three superior officers, alleging due process and first amendment violations, a violation of 42 U.S.C. Sec. 1983, and a violation of National Guard regulations governing investigations of National Guard members.
 
 I.
 
 2
 Sebra serves in the California Air National Guard as a dual status employee. He holds a part-time military position at the rank of Major, and he is employed as a full-time civil service flight instructor. At the time he filed suit, Sebra was stationed at the CANG base in Fresno, where he had spent most of his eighteen years with the CANG.
 
 
 3
 In January 1984, an official Board of Inquiry began to investigate alleged mismanagement at the Fresno base. Sebra contends that the investigation was rumored at the time to have been directed at the base commander, a man whom Sebra had outspokenly supported. Sebra alleges that although he was questioned about his relationship with the base commander, he was not told that he was a subject of the investigation. Sebra contends that the investigation violated applicable National Guard regulations, specifically regulations providing that National Guard members have a right 1) to be aware of investigations directed at them and 2) to respond to allegations made against them.
 
 
 4
 In March 1984, the Board of Inquiry issued a report and recommended that Sebra be given a written reprimand. This recommendation was not disclosed to Sebra at that time. The base commander who had been under investigation left the Fresno base in July 1984.
 
 
 5
 In April 1985, William Neville, the new base commander, told Sebra that he was being transferred to March Air Force Base in Riverside. According to Sebra, Neville gave no specific grounds for the transfer, except to say that the transfer was "punitive" and that Sebra should learn not to place all of his allegiance in one person. The executive officers of the California National Guard, Adjutant General Shank and Assistant Adjutant General Thrasher, accepted Neville's recommendation of Sebra's transfer and implemented the transfer order.
 
 
 6
 Neville, Shank, and Thrasher contend that after the report of the Board of Inquiry and after the base commander who had been under investigation left in July 1984, the commanding officers at the Fresno base received a wide variety of negative comments regarding Sebra's performance. Neville was twice asked, in August 1984 and in April 1985, what his recommendation was concerning Sebra's status. On the first occasion, Neville requested time to observe and evaluate Sebra. On the second occasion, after a two or three week period of deliberation, Neville recommended that Sebra be transferred.
 
 
 7
 At no point during the chain of events leading up to Neville's recommendation was Sebra given an opportunity to review the allegations against him and to respond to the Board of Inquiry's findings respecting those allegations. At the time the transfer decision was made, Sebra was still unaware that the Board of Inquiry report had focused in part on him.
 
 
 8
 On May 7, 1985, Sebra received written notice that he was being transferred in his civilian capacity to the Riverside base. Approximately four months later, on September 5, 1985, Sebra received his military reassignment from the Fresno base to the Riverside base.
 
 
 9
 In May 1985, approximately one month after receiving the civilian transfer order, Sebra filed suit in the Eastern District of California. He alleged that Neville, Shank, and Thrasher had abridged his due process and first amendment association rights, in violation of 42 U.S.C. Sec. 1983. In September 1985, Sebra moved to amend his complaint so as to include, as an alternative theory of liability, the allegation that by failing to inform Sebra at the time of the Board of Inquiry investigation that the investigation was partly focused on Sebra, and by failing to give Sebra an opportunity to respond to the allegations against him, Neville, Shank, and Thrasher violated applicable National Guard regulations. The district court granted this motion on October 11, 1985.
 
 
 10
 Hearings were held on October 10 and 11, 1985. After oral argument, but before the full hearing, the district court granted Neville's motion to dismiss. The court granted the motion to dismiss on the express grounds that Neville was immune from a suit for damages, and that Neville was not empowered to provide the remedy sought by Sebra in his application for injunctive relief because Neville lacked the authority to rescind the challenged transfer order. The court then allowed Sebra to present evidence and testimony with respect to Shank and Thrasher in support of his application for a preliminary injunction and in support of his allegations of constitutional violations in contravention of Sec. 1983, and of violations of applicable National Guard regulations. The court denied the application for injunctive relief and granted summary judgment for Shank and Thrasher. The court declared orally that the transfer decision did not represent an "adverse" action, that there was no connection between the investigation and the transfer, and that the case represented a non-justiciable military dispute.
 
 II.
 
 11
 We review both the dismissal of Neville and the grant of summary judgment de novo. In reviewing the dismissal, we consider all allegations of material fact in the light most favorable to the non-moving party. North Star International v. Arizona Corp. Commission, 720 F.2d 578, 580 (9th Cir.1983). We will affirm the dismissal only if there is no set of facts which would give Sebra a claim upon which relief could be granted. Halet v. Wend Investment Co., 672 F.2d 1305, 1309 (9th Cir.1982). In reviewing the summary judgment, we view all evidence and inferences in the light most favorable to the non-moving party in order to determine if there is a genuine dispute as to a material fact, and whether the moving party is entitled to judgment as a matter of law. Water West, Inc. v. Entek Corp., 788 F.2d 627, 628-29 (9th Cir.1986). We review de novo the correctness of the legal standard which the district court applied in denying Sebra's application for a preliminary injunction. Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir.1985). We review the district court's application of that standard under an abuse of discretion standard. Id.
 
 III.
 
 12
 Neville's Dismissal.
 
 
 13
 We affirm the dismissal of Neville. As the Commander of the Fresno base, Neville lacked the authority to transfer Sebra or to rescind the transfer. The authority to employ and to administer National Guard technicians is vested in the adjutant general of each state. See National Guard Technicians Act of 1968, 32 U.S.C. Sec. 709(c) (1982). See also California National Guard v. F.L.R.A., 697 F.2d 874, 877 (9th Cir.1983) (the adjutant general has the authority to make decisions relating to the employment, administration, and discipline of National Guard technicians); Montana Chapter of Association of Civilian Technicians, Inc. v. Young 514 F.2d 1165, 1166 (9th Cir.1975) (same). Neville's lack of authority to order the transfer or to rescind it precludes Sebra from obtaining injunctive relief against him. Because Neville had no involvement with the Board of Inquiry investigation which allegedly violated the National Guard regulations governing investigations, and because there is no other basis for Sebra's claim against Neville, the district court did not err in dismissing that claim.
 
 IV.
 
 14
 Denial of Preliminary Injunction.
 
 
 15
 We affirm the denial of the preliminary injunction. Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir.1985), cited by both parties, is controlling. In Hartikka a captain in the U.S. Air Force with a history of intoxication was discharged "under honorable conditions," a less than "honorable" discharge. We reversed the district court's grant of a preliminary injunction, holding that the test for injunctive relief is much more stringent for a government military employee than the normal test for an injunction. We held that Hartikka's hardship from his discharge "under honorable conditions" was not severe enough to warrant an injunction, especially when weighed against the hardship to the military of judicial scrutiny of every military personnel decision.
 
 
 16
 The fact that Sebra is a dual status employee who performs both civilian and military functions for CANG, whereas Hartikka was an Air Force captain whose duties were exclusively military, does not render Hartikka inapposite to this case. Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), on which Hartikka relied, extends beyond a simple rationale of deference to the military's internal decision-making. In Sampson, the Supreme Court addressed the broader issue of the appropriate legal standard for preliminary injunctions in Government personnel cases. The Court noted, among other factors, "the obviously disruptive effect which [grants] of temporary relief ... [are] likely to have on the administrative process," id. at 83, 94 S.Ct. at 949-50; "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,' " id. (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)); and "the traditional unwillingness of courts of equity to enforce contracts for personal service either at the behest of the employer or of the employee," id. (citing 5A A. Corbin, Contracts Sec. 1204 (1964). The Court concluded that in order to qualify for temporary injunctive relief in such cases a plaintiff must make a greater showing of irreparable injury than is required under the traditional standard governing preliminary injunctions. The plaintiff's showing must be "sufficient in kind and degree to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases." Id. 415 U.S. at 84, 94 S.Ct. at 950. Thus, reading Hartikka in the light of Sampson, we conclude that Hartikka embraces the instant case.
 
 
 17
 The hardship which Sebra claims he suffered as a result of his transfer is less serious than the hardship demonstrated in Hartikka. The consequences of a transfer case are ordinarily less severe than those of a discharge case. The district court properly denied Sebra's application for a preliminary injunction.
 
 V.
 
 18
 Grant of Summary Judgment.
 
 
 19
 Sebra also appeals from the summary judgment granted to Shank and Thrasher on Sebra's Sec. 1983 claim, his constitutional claims, and his claim based on the alleged violations of applicable National Guard regulations.
 
 
 20
 In his arguments before this court, Sebra has sporadically stressed the distinctive hybrid character of the National Guard technician program. Other circuits have discussed the unique civilian/military status of National Guard technicians. See Association of Civil Technicians v. F.L.R.A., 780 F.2d 12, 13 (7th Cir.1985) (National Guard technicians are exempted from certain military duties, and their dismissal and annual evaluation must comply with civilian, not military, standards); New York Council, Association of Civil Technicians v. F.L.R.A., 757 F.2d 502, 505 (2d Cir.1985) (National Guard technicians have federal civilian employee status under the National Guard Technicians Act of 1968; they are assigned civilian wage grades, receive civilian fringe benefits, and may negotiate civilian labor agreements); New Jersey Air National Guard v. F.L.R.A., 677 F.2d 276, 278-79 (3d Cir.1982) ("[O]ften the responsibilities and duties of ... National Guard technicians[ ] correspond directly to those of other civilian employees, yet they arise in a distinctly military context, implicating significant military concerns."). National Guard technicians also possess a unique state/federal status. See American Federation of Government Employees v. F.L.R.A., 730 F.2d 1534, 1536 (D.C.Cir.1984) ("[N]ational [G]uardsmen [cannot] be easily analogized to other federal employees because, except for federal benefits and tort claims coverage, it was the intent of Congress in the 1968 Technician Act that they be the equivalent of state employees."); Maryland v. United States, 329 F.2d 722, 725 (3d Cir.1964) (National Guard units are independent military forces subject to the exclusive jurisdiction of the states, except when they are called into the active service of the United States).
 
 
 21
 Some cases suggest that controversies between National Guard technicians and the National Guard should be treated differently than ordinary military disputes for the purposes of the justiciability inquiry. See Laird v. Tatum, 408 U.S. 1, 15-16, 92 S.Ct. 2318, 2326-27, 33 L.Ed.2d 154 (1972) (federal courts are fully empowered to consider claims of injury resulting from intrusion of the military sector into the civilian sector); Dunlap v. Tennessee, 514 F.2d 130, 133 (6th Cir.), rev'd on other grounds, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1975) ("military" decisions made for non-military reasons, and involving no application of military expertise, may be outside the boundaries of the doctrine of unreviewability); Renicker v. Marsh, 640 F.Supp. 244 (N.D.Ohio 1986) (same). But see Covington v. Anderson, 487 F.2d 660, 664 (9th Cir.1973) (as an essential reserve component of the United States military, the National Guard is subject to the traditional rule against review of military decisions). See also Penagaricano v. Llenza, 747 F.2d 55, 62-63 (1st Cir.1984) (routine judicial review of claims by National Guard technicians against the National Guard would undercut the military readiness and operational efficiency of the National Guard); American Federation of Government Employees v. F.L.R.A., 730 F.2d 1534, 1544 (D.C.Cir.1984) (The Guard is "a military organization dedicated to a military mission."); New Jersey Air National Guard v. F.L.R.A., 677 F.2d 276, 279 (3d Cir.1982) (The responsibilities and duties of National Guard technicians arise in a distinctly military context and implicate significant military concerns).
 
 
 22
 In Gilligan v. Morgan, 413 U.S. 1, 11, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1972), the Supreme Court did not decide the question of the justiciability of disputes involving the National Guard, stating that "we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law ..." On several occasions we have reviewed disputes involving National Guard technicians on the merits. See American Federation of Government Employees v. F.L.R.A., 775 F.2d 1022 (9th Cir.1985); Montana Air National Guard v. F.L.R.A., 730 F.2d 577 (9th Cir.1984).
 
 
 23
 Sebra acknowledges that this case should be treated as a military dispute for the purposes of justiciability analysis. The civilian aspect of Sebra's employment required the military aspect. Unless the Secretary of the Air Force or the Secretary of the Army expressly provides by regulation to the contrary, one cannot hold employment as a National Guard technician unless one also holds a military rank. National Guard Technicians Act of 1968, 32 U.S.C. Sec. 709(b) (1982). In addition, a National Guard technician who holds a position for which a military rank is required must automatically be removed from his civilian technician employment if he or she ceases to hold a military position within the National Guard. 32 U.S.C. Sec. 709(e)(1) (1982). We therefore hold that the traditional doctrine restricting review of military decision-making applies.
 
 
 24
 Federal courts restrict their review of military decision-making not because they lack jurisdictional power to hear military disputes, but out of deference to the special function of the military in our constitutional structure and in the system of national defense. Military disputes thus raise questions of justiciability rather than jurisdiction. Khalsa v. Weinberger, 779 F.2d 1393, 1395-97 (9th Cir.1985), judgment aff'd, 787 F.2d 1288 (9th Cir.1985).
 
 
 25
 We have held that some military decisions are justiciable. We will review, for example, discharge decisions. Muhammad v. Secretary of the Army, 770 F.2d 1494, 1495 (9th Cir.1985). The law as to transfers is more complicated. Prior to 1981, we appeared to have a virtual per se rule declining review of transfers. Schlanger v. United States, 586 F.2d 667, 671-72 (9th Cir.1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); Covington v. Anderson, 487 F.2d 660, 664-65 (9th Cir.1973); Arnheiter v. Chafee, 435 F.2d 691 (9th Cir.1970). The policy behind these decisions is clear: the military would grind to a halt if every transfer were open to legal challenge.
 
 
 26
 In 1981, however, we moved toward a two-prong test developed in the Fifth Circuit. Wallace v. Chappell, 661 F.2d 729, 732-34 (9th Cir.1981), rev'd on other grounds, 461 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (referring to Mindes v. Seaman, 453 F.2d 197 (5th Cir.1971)). We applied the Mindes test explicitly in Gonzalez v. Department of Army, 718 F.2d 926, 929 (9th Cir.1983). Although we have never applied the Mindes test in the specific context of a dispute involving a National Guard technician, other circuits have done so. See, e.g., Penagaricano v. Llenza, 747 F.2d 55, 60-64 (1st Cir.1984); NeSmith v. Fulton, 615 F.2d 196, 201-03 (5th Cir.1980); Turner v. Egan, 358 F.Supp. 560, 562-64 (D.Alaska), aff'd mem., 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). We join those courts and review the justiciability of Sebra's claims under the Mindes test.
 
 
 27
 The Mindes test, as modified by this circuit, declares that an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of the Constitution, a federal statute, or a military regulation; and (b) exhaustion of available intraservice remedies. Khalsa, 779 F.2d at 1398 (quoting Wallace v. Chappell ). If the plaintiff meets both prerequisites, the court then weighs four factors to determine whether review should be granted: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the extent to which review would potentially interfere with military functions; and (4) the extent to which military discretion or expertise is involved.
 
 
 28
 Sebra meets the two prerequisites of the Mindes test. He has alleged violations of the Constitution and of military regulations, and he has exhausted his intraservice remedies.
 
 
 29
 Sebra cannot, however, satisfy the four factors of the test. The first factor to be weighed is the nature and strength of Sebra's claims. Sebra alleges two principal claims. The first is a due process claim which he seeks to bring under 42 U.S.C. Sec. 1983. Sebra predicates the due process claim on an asserted property interest in the National Guard regulations governing investigations of National Guard technicians. Sebra argues that his property interest in the regulations was impaired when his superiors within the National Guard violated the regulations in the course of the investigation which at least partially led to Sebra's transfer. Sebra's second main claim is that the alleged violations of applicable National Guard regulations by Shank and Thrasher were actionable violations per se.
 
 
 30
 The fatal flaw in Sebra's due process claim is the fact that Sebra has no property interest in the regulations governing investigations. "Property interests ... are not created by the Constitution .... [T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Procedures, such as rules governing the National Guard's internal investigations, do not by themselves confer underlying substantive property rights. When a substantive property interest does not independently exist, rules for procedural fairness do not create such an interest. Dorr v. County of Butte, 795 F.2d 875, 877 (9th Cir.1986). Here, the National Guard regulations designed to assure procedural fairness in investigations do not confer or create a protected property interest.
 
 
 31
 The chief weakness in Sebra's other claim is that it ignores the military's broad discretionary authority with respect to transfers of military personnel. The Constitution confers plenary power over the military upon Congress, which in turn has delegated to the military considerable discretion over the handling of internal processes such as personnel matters. Even if this court were to review Sebra's claim for damages flowing from the alleged violations of applicable National Guard regulations, it would do so cautiously and with deference.
 
 
 32
 A weakness common to each of Sebra's claims relates to the immunity doctrine first developed in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Although we have not applied Feres to Sec. 1983 claims, recent case authority indicates that the doctrine extends to claims for damages from alleged constitutional or regulatory violations. See United States v. Shearer, --- U.S. ---, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); Chappell v. Wallace, 462 U.S. 296, 298-99, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); Trerice v. Pedersen, 769 F.2d 1398, 1403-04 (9th Cir.1985); Mollnow v. Carlton, 716 F.2d 627, 628 (9th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). Several circuits have specifically held that Sec. 1983 suits are barred under the Feres doctrine. See Crawford v. Texas Army National Guard, 794 F.2d 1034 (5th Cir.1986); Martelon v. Temple, 747 F.2d 1348 (10th Cir.1984); Brown v. United States, 739 F.2d 362, 367 (8th Cir.1984). See also Jorden v. National Guard Bureau, No. 85-0670, slip op. (E.D.Penn. Sept. 24, 1985).
 
 
 33
 The second factor also weighs against review of Sebra's claims. Sebra's potential injury is the inconvenience of moving his household, which admittedly can be traumatic enough, but he has not been demoted or discharged.
 
 
 34
 The last two factors focus on the extent of interference with military functions and the amount of military expertise involved in the actions at issue. Sebra's claims suffer from a critical defect in these respects: military transfer decisions go to the core of deployment of troops and overall strategies of preparedness. Courts are properly wary of intruding upon that sphere of military decision-making.
 
 
 35
 Applying the Mindes test, we thus conclude that Sebra's claim is not justiciable. The nature and strength of His substantive claim is weak; his injury is not severe; and the potential for interference with essential military prerogatives, if we reviewed this case on the merits, would be great.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation