Douglas B. DUKE, Petitioner,

v.

The Honorable James H. WEBB, Jr.,
Secretary to the Navy, et al.,
Respondents.

Civ. No. 87-1423-G(IEG).

United States District Court,
S.D. California.

Nov. 5, 1987.

Ronald C. Stout, San Diego, Cal., for petitioner.

Dennis E. LeClere, Sp. Asst. U.S. Atty., San Diego, Cal., for respondents.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

Petitioner's application for a writ of habeas corpus came on for hearing November 4, 1987, before the Honorable Earl B. Gilliam. Petitioner was represented by Ronald C. Stout; respondents were represented by Michael McCloskey and Dennis E. LeClere. Prior to the hearing, the parties had agreed to bifurcate the hearing so that the court could first determine the issues of exhaustion and justiciability before hearing evidence regarding the adequacy of petitioner's training. At the hearing, the parties' arguments focused on the issues of exhaustion and justiciability. At the conclusion of the hearing, the court reserved its ruling and informed the parties that it would issue a written opinion. Having considered the points and authorities and oral argument of counsel, the court issues this memorandum decision.

### FACTS

Petitioner, Douglas Duke, is a lieutenant commander in the United States Navy. He has petitioned this court for a writ of habeas corpus to be honorably discharged from the Navy alleging that the Navy breached its agreement with him to provide proper training so that he could become a pilot.

Petitioner graduated first in his class from the United States Naval Academy at Annapolis in 1976. Upon graduation, he

entered the Navy, where he continues to serve. His obligatory service was to expire in March 1984.

In June 1981, petitioner applied for the naval-flight-officer-to-pilot training program, and the Navy accepted his application in August 1981. To become a pilot, petitioner agreed to serve an additional five years in the Navy, and he agreed to serve the additional time regardless of whether he ultimately became a pilot. *See* Respondent's Exhibit 2 at ¶ 6b. Because of his agreement to serve additional time in the Navy, petitioner is not due to be discharged from the Navy until March 1989.

Petitioner reported to flight school on April 20, 1982, and he completed flight training in March 1984. He was then designated a naval aviator by the chief of naval air training. In July 1985, petitioner was transferred to an operational squadron located in San Diego. In addition to his flight training, he was given the duty of squadron administrative officer.

While at the fighter squadron in San Diego, petitioner had bad landing scores, and the commanding officer refused to let him continue to fly. The commanding officer convened a Human Factors Evaluation Committee to review petitioner's performance. The Committee met on September 3, 1985, and, after hearing from petitioner, recommended that petitioner be assigned less onerous administrative duties so that he could concentrate on improving his flight skills. The Committee additionally recommended that petitioner be made the number one priority for future field-carrier-landing-practice (FCLP) flights.

Petitioner continued to have problems landing his aircraft, so his commanding officer convened on October 17, 1985, a Field Naval Aviator Evaluation Board to assess petitioner's continued service as a naval aviator. After reviewing his flight records and interviewing various witnesses, the Board concluded that petitoner's poor landing performance was due to inappropriate and exaggerated corrections made while approaching the flight deck of a moving carrier. The Board recommended that petitioner be placed in flying probationary status, that he be given intensive FCLP training, and that he be relieved of all collateral administrative duties.

In November 1985, petitioner participated in at-sea landing practices. He was not relieved of his administrative duties because his commanding officer believed that those duties did not overwhelm or impact his flying performance. Petitioner's landing performance during the November landing practices again was unsatisfactory. Based on this unsatisfactory performance, petitioner's commanding officer recommended termination of his probationary status and revocation of his flight status.

Based on this recommendation, a Naval Aviator Evaluation Board was convened to determine whether the commanding officer's recommendation should be effected. Petitioner was heard at this hearing, and, on July 30, 1986, petitioner's flight status was terminated.

Petitioner appealed to the Secretary of the Navy on July 28, 1986. His request for reinstatement and for a review of his case was denied on October 20, 1986. On January 30, 1987, petitioner was redesignated a non-flying general aviation officer.

On March 18, 1987, petitioner submitted a request to resign from the Navy. His request was denied on June 30, 1987. Petitioner sought reconsideration of his request to resign on July 16, 1987, but the Navy again denied his request to resign.

On September 16, 1987, petitioner was informed that he would be receiving orders to the USS Ranger, which was home-ported in San Diego. He was issued orders on September 29, 1987, and he was instructed to report for training between October 13 and 23; he was also told to report to the ship no later than November 30, 1987.

## LEGAL DISCUSSION

"Federal courts restrict their review of military decision-making not because they lack jurisdictional power to hear military disputes, but out of deference to the special function of the military in our constitutional structure and in the system of national

defense. Military disputes thus raise questions of justiciability rather than jurisdiction." *Sebra v. Neville,* 801 F.2d 1135, 1141 (9th Cir.1986). Thus, federal courts are extremely reluctant to intervene in matters involving the military. *See, e.g., Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

■ To determine the reviewability of an internal military decision, the Ninth Circuit Court of Appeals has adopted a multipronged test. *See Sebra,* 801 F.2d at 1141 (applying *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971).[1] An internal military decision is unreviewable unless the plaintiff alleges: (a) a violation of the Constitution, a federal statute, or a military regulation; and (b) exhaustion of available intraservice remedies. *Sebra,* 801 F.2d at 1141. And even if the plaintiff meets these prerequisites, the court must weigh four factors to determine whether review is appropriate: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the extent to which review would potentially interfere with military functions; and (4) the extent to which military discretion or expertise is involved. *Id.*

### I. Threshold Factors

a. Violation of a Constitutional Right

Petitioner has not alleged that the government violated a federal statute or a military regulation; instead, he contends that he is being detained unconstitutionally. On this issue, his papers allege in full: "He is being unlawfully held in the custody of Respondents by unlawful compulsory service in the United States Navy." Although petitioner's arguments, oral and written, are not very helpful in defining how his service in the Navy violates one of his constitutional rights, for purposes of this motion the court assumes that petitioner has successfully alleged the deprivation of a constitutional right. Consequently,

the court will proceed to address the other *Mindes* factors.

b. Exhaustion of Administrative Remedies

The second requirement to review internal military decisions is that the plaintiff have exhausted all available intraservice remedies. *See Sebra,* 801 F.2d at 1141. The Ninth Circuit consistently has held that "unless statutorily mandated application the exhaustion doctrine lies in the sound discretion of the district court." *Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir.1985).

■ 10 U.S.C. § 1552(a) (1982) permits members of the military to petition to the Board for the Correction of Naval Records (BCNR) to correct an error or remove an injustice in military records. This procedure is not a statutorily required prerequisite to habeas relief. *See Montgomery v. Rumsfeld,* 572 F.2d 250, 254 (9th Cir.1978). Thus, the court has discretion to determine whether petitioner should be required to exhaust his administrative remedies.

This requires the court to engage in a two-step analysis: (1) the court must determine whether the facts of this case fall into one of four categories that excuse the exhaustion requirement; and (2) if exhaustion is not excused in step one, the court must apply a balancing-of-interests approach to determine whether exhaustion should otherwise be excused.

i. Four Categories that Excuse Lack of Exhaustion

The Ninth Circuit has identified four circumstances in which exhaustion will not be required: (1) the administrative remedies do not provide an opportunity for adequate relief; (2) petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) administrative appeal would be futile; or (4) substantial constitutional questions are raised. *See Muhammad v.*

---

**1.** *Petitioner argues that the government's decision to separate him from his flight status is not an "internal military decision" and that the multipronged test does therefore not apply. It is difficult to understand, however, how the mili-* tary's decision that one of its aviators is unqualified to fly and should therefore be relieved of his flight status is not an internal military decision. Thus, the court applies the *Mindes* test to the instant case.

*Secretary of the Army,* 770 F.2d 1494, 1495 (9th Cir.1985).

With respect to the first circumstance listed above, the court must determine whether the BCNR can award petitioner the relief he seeks—namely, an honorable discharge from the Navy. The answer to this question is unclear.

32 C.F.R. § 723.6(e) (1987) lists the categories of action the BCNR is authorized to take as final actions on behalf of the Secretary of the Navy. Honorable discharge is not among the authorized final actions the Secretary of the Navy has delegated to the BCNR. Thus, it is unclear whether the BCNR can give petitioner an honorable discharge.

The government has attached an affidavit of the Executive Director of the BCNR, W. Dean Pfeiffer. Paragraph 5 of the affidavit reads in full: "The powers of BCNR are rather broad. It can, inter alia, change reenlistment codes, *recommend discharge* or reinstatement and back pay and effect other changes to correct an error or injustice in the naval record of a former member" (emphasis added). Hence, it appears that the BCNR cannot on its own discharge petitioner; instead, it can only recommend discharge to the Secretary of the Navy.

This raises the third circumstance excusing exhaustion—namely, whether petitioning to the BCNR would be futile. Here, petitioner appealed to the Secretary of the Navy for a review of his case and for reinstatement of his flight status, but the Secretary's office denied petitioner's request. Petitioner attempted to get a meeting with the Secretary, but had only a brief, unsuccessful meeting with the Secretary's assistant on January 5, 1987.

Petitioner has a strong argument that petitioning to the BCNR would be futile. Considering that the BCNR could only recommend to the Secretary that petitioner be honorably discharged and the Secretary has already denied petitioner's request for reinstatement, it seems likely that his petition to the BCNR would ultimately prove to be futile. Consequently, without deciding the issue, this court assumes for purposes of this motion that requiring petitioner to petition the BCNR would ultimately prove to be futile.

## II. Discretionary Factors

■ Because this court has assumed that petitioner has alleged adequately the violation of a constitutional right and that petitioning the BCNR would be futile, the court must next weigh the following four discretionary factors to determine whether review should be granted: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the extent to which review would potentially interfere with military functions; and (4) the extent to which military discretion or expertise is involved. *Sebra,* 801 F.2d at 1141. Weighing these four discretionary factors inevitably leads to the conclusion that this case is nonjusticiable.

### a. The Nature and Strength of Petitioner's Claim

Petitioner claims that he is being unlawfully deprived of his liberty because the Navy breached its agreement to provide him with adequate training. The nature of his claim is substantial in that he contends he is being deprived of his liberty. It is less clear, however, how strong his claim is. Although he asserts that the Navy provided him with inadequate training, he does not specify what would have constituted adequate training. Furthermore, for the purposes developed below, this court is of the opinion that it is not the judiciary's role in our system of government to enter the sphere of the military and determine what constitutes adequate training.

### b. The Potential Injury to Petitioner If Review is Denied

If this court declines to review petitioner's claim, the injury to petitioner will be that he is required to remain in the Navy until March 1989. Considering that petitioner's liberty is at stake, this injury is not insubstantial. There are, however, mitigating factors. Petitioner has already been in the Navy for over ten years; thus, he is no

stranger to the military. Furthermore, petitioner attended Annapolis, where he graduated number one in his class. Considering his training and his rank from Annapolis, petitioner may be able to find some other worthy job while he serves his remaining time in the Navy.

### c. The Extent to Which Review Would Potentially Interfere with Military Functions

It is the weighing of the following two factors that compels this court to find the instant case nonjusticiable. The Ninth Circuit has stated that "change in duty assignments are subject to the non-reviewability rule." *Covington v. Anderson*, 487 F.2d 660, 665 (9th Cir.1973). The Ninth Circuit adopted this rule because "[a]ny attempt of the federal courts, absent some direction or permission from Congress to do so, to take over review of military duty assignments, commands and promotions would obviously be fraught with practical difficulties for both the armed forces and the courts." *Id.* (quoting *Arnheiter v. Ignatius*, 292 F.Supp. 911, 921 (N.D.Cal.1968)).

The facts of *Covington* are not too different from those presented in this case. In *Covington*, the plaintiff was a jet pilot with the Oregon National Guard. On January 7, 1971, the Defense Department ordered all National Guard units to reduce jet pilot strength to "authorized" levels. A committee was formed to select pilots who would be involuntarily separated from their units. The plaintiff's name was chosen, and he was suspended from flying. *See id.* at 662. He brought suit to enjoin the military from suspending his flight status. The district court granted the government's motion for summary judgment, and the plaintiff appealed.

On appeal, the Ninth Circuit held that the issue was nonjusticiable. The court reasoned that any other holding would require the courts to "take over review of military duty assignments," a task for which the courts were not designed. *Id.* at 665.

To consider petitioner's application for a writ of habeas corpus would result in the problem the Ninth Circuit avoided in *Covington*. In effect, petitioner is arguing here that he should be discharged from the Navy because the Navy did not give him proper training to become a pilot. To consider this argument, the court would have to determine what constitutes proper training—e.g., how many FLCP's are required, how many administrative duties petitioner could perform. This would result in the court taking over review of military duty assignments, a role the Ninth Circuit said federal court should avoid. *See Covington v. Anderson*, 487 F.2d 660 (9th Cir.1973).

The Ninth Circuit case of *Schlanger v. United States*, 586 F.2d 667 (9th Cir.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979), also suggests that the instant controversy is nonjusticiable. In *Schlanger*, the plaintiff enlisted in the Air Force for four years in 1962. In 1965, he applied for entrance into the Airman's Education and Commissioning Program (AECP), an Air Force program providing undergraduate education and officer training leading to an officer's commission. The plaintiff was accepted into the program and was assigned to Arizona State University. As part of the program, the plaintiff received a discharge on December 8, 1966, and reenlisted on December 9, 1966, for a period of six years. In early 1968, plaintiff became actively involved in the ASU Civil Rights Board, a group that focused on correcting perceived racial discrimination in housing. A short time later, an Air Force officer at ASU summoned the plaintiff to appear before him at a "counselling" session. The plaintiff contended that the officer denounced his civil rights activities and informed him that he was "getting in with bad groups." *Id.* at 668. On June 17, 1968, the plaintiff was notified that he was being removed from the program. He brought suit in federal court, and the district court dismissed the complaint because it raised "nonreviewable internal military matters." *Id.* at 671.

On appeal, the Ninth Circuit upheld the district court. The Ninth Circuit held that the Air Force's decision to remove the plaintiff from the program was an internal

**1524**

military decision regarding a duty order not subject to judicial review in the federal courts. *Id.* at 673.

Hence, following both *Covington* and *Schlanger*, it is clear that the Navy's decision to separate involuntarily petitioner from his flight status is the type of internal military decision that federal courts should leave to the military.

### d. The Extent to Which Military Expertise or Discretion Is Involved

The final discretionary factor for the court to consider in determining whether judicial review is appropriate is the extent to which the exercise of military expertise or discretion is involved. *See Sebra*, 801 F.2d at 1141. Here, there seems to be a good deal of military expertise or discretion involved. In effect, the controversy centers around whether petitioner received adequate training to become a pilot. If the court determines this issue, it will essentially be laying out guidelines for what constitutes adequate and inadequate training. This would involve a severe intrusion into the military sphere by the court.

For the foregoing reasons, this court finds that the Navy's decision that petitioner was unfit to fly was an internal military decision that is nonjusticiable. If this court chose to review the case, it would have to decide whether or not petitioner was given adequate training. The court would then have to determine what constitutes adequate training, a decision that would place the court in a role overseeing military administrative decisions. This is a role that the court should avoid. As a result, this case is nonjusticiable and is hereby dismissed.

Attorneys for defendants are to prepare an order consistent with this decision.

IT IS SO ORDERED.