Jerry GILLIAM, Plaintiff–Appellant,

v.

Richard W. MILLER; United States of America, by and through the National Guard Bureau, Defendants–Appellees.

Jerry GILMER, Plaintiff–Appellant,

v.

Carol J. BROWN, Defendant,

and

Richard W. Miller; United States of America, Defendants–Appellees.

Nos. 91–35085, 91–35115.

United States Court of Appeals, Ninth Circuit.

Submitted July 10, 1992 *.

Decided Aug. 21, 1992.

Stephen Simms, Portland, Or., for plaintiff-appellant.

Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendant federal appellees.

Cynthia A. Forbes, Asst. Atty. Gen., Salem, Or., for defendant state appellees.

Before: TANG, FERGUSON and THOMPSON, Circuit Judges.

* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

TANG, Circuit Judge:

Jerry Gilmer and Jerry Gilliam, former members of the Oregon Army National Guard ("ORARNG"), appeal the dismissal of their complaints under the federal Administrative Procedures Act ("APA"). Gilmer and Gilliam claim that the Oregon Adjutant General ("OAG") acted as a federal agency when he dismissed them from ORARNG for violation of federal Army weight control standards, which Oregon law makes applicable to members of ORARNG. The district court concluded that the OAG's action was taken in his capacity as a state officer, rendering the APA inapplicable. Gilmer and Gilliam individually appeal their dismissals and their appeals have been consolidated. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Both Gilmer and Gilliam held contemporaneous status as members of ORARNG, members of the Army National Guard of the United States ("ARNGUS"), and as federal civilian technicians.[1] Both Gilmer and Gilliam were long time members of ORARNG, Gilmer for approximately 22 years and Gilliam for approximately 18 years. As a condition of membership in ARNGUS, Gilmer and Gilliam were required to maintain their membership in ORARNG. *See* 10 U.S.C. § 101(11). Federal law also required Gilmer and Gilliam to maintain membership in ORARNG as a condition of their employment as technicians. 32 U.S.C. § 709(b). In fact, the OAG must terminate the federal employment of a civilian technician who loses status as a member of the state National Guard. 32 U.S.C. § 709(e)(1).

Command of ORARNG is vested in the OAG. Or.Rev.Stat. § 396.160(1) (1991). The OAG exercised employment and administrative authority over Gilmer and Gilliam.

On May 15, 1985, the OAG terminated Gilmer's and Gilliam's membership in ORARNG for failure to comply with federal Army weight control standards. Army Regulation 600–9.[2] Because Gilmer and Gilliam lost membership in the ORARNG, the OAG was mandated by 32 U.S.C. § 709(e)(1) to terminate Gilmer and Gilliam from their federal civilian technician positions. Because Gilmer and Gilliam lost membership in ORARNG, they also lost membership in ARNGUS. 10 U.S.C. § 101(11).

Gilmer and Gilliam filed suit in federal district court alleging that officials of ORARNG did not provide the services and follow the procedures required by the weight control program before recommending that Gilmer and Gilliam be found in violation of the weight regulation. Gilmer and Gilliam requested injunctive relief in the form of reinstatement to ORARNG and reinstatement to their federal civilian jobs. Jurisdiction in the district court was predicated upon 28 U.S.C. § 1331(a) and the federal APA, 5 U.S.C. § 702.

The OAG moved for summary judgment arguing that, although he acted in the capacity of a federal agency when he discharged Gilmer and Gilliam from their civilian technician positions, he did not act as a federal agency when he terminated Gilmer and Gilliam from ORARNG. According to the OAG, because a federal agency did not remove Gilmer and Gilliam from ORARNG, these removals are not subject to review under the APA. The magistrate judge recommended, and the district court initially approved, the finding that the OAG acted in the capacity of a federal agency when he terminated Gilmer and Gilliam from ORARNG.

Following the Supreme Court decision in *Perpich v. Department of Defense*, 496 U.S. 334, 348, 110 S.Ct. 2418, 2426, 110

---

1. Technicians are employed to meet the day-to-day administrative, training, and logistic needs of ORARNG, because ORARNG is not a full-time active militia.

2. The federal Army Regulation was made applicable to Gilmer and Gilliam because Oregon law requires that members of the state National Guard be "organized, armed, disciplined, governed, administered and trained as prescribed by applicable federal and state laws and regulations." Or.Rev.Stat. § 399.045 (1991); *see also id.* § 399.015 (stating that all members of ORARNG must meet the requirements for federal recognition).

L.Ed.2d 312 (1990), the OAG moved the district court to reconsider its decision. The OAG contended that he wore a "state militia hat" when he terminated their OR-ARNG membership. The district court agreed and dismissed Gilliam's and Gilmer's complaints for failure to state a claim under the federal APA. *See* Fed. R.Civ.P. 12(b)(6).

Gilmer and Gilliam timely appealed the dismissal of their complaints to this court.

## STANDARD OF REVIEW

■ A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

## DISCUSSION

### A. *Justiciability*

As a threshold matter, we must first consider the justiciability of this military dispute. *See Sebra v. Neville*, 801 F.2d 1135, 1140–41 (9th Cir.1986) (holding that traditional doctrine restricting review of military decisions applies to controversies between National Guard technicians and the National Guard). We restrict our review of military decision-making out of deference "to the special function of the military in our constitutional structure and in the system of national defense." *Id.* at 1141. We follow the test established in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), to evaluate the justiciability of the military dispute. *Id.; see also Khalsa v. Weinberger*, 779 F.2d 1393, 1396 (9th Cir.), *reaff'd* 787 F.2d 1288 (1985).

> The *Mindes* test ... declares that an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of the Constitution, a federal statute, or a military regulation; and (b) exhaustion of available intraservice remedies.... If the plaintiff meets both prerequisites, the court then weighs four factors to determine whether review should be granted: (1) the nature and strength of

the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the extent to which review would potentially interfere with military functions; and (4) the extent to which military discretion or expertise is involved. *Sebra*, 801 F.2d at 1141 (internal citation omitted).

Gilmer's and Gilliam's claim does not rest upon a constitutional ground or a violation of a federal statute. Rather, Gilmer and Gilliam contend a violation of a military regulation. We need not analyze the prerequisite of the availability of intraservice remedies in this case, because the justiciability of the dispute hinges upon the strength of Gilmer's and Gilliam's claim under the APA. Unless it is shown that the OAG acted in the capacity of a federal agency when he removed Gilmer and Gilliam from ORARNG, 5 U.S.C. §§ 701(b)(1), 702, the strength of Gilmer's and Gilliam's claim is non-existent. In other words, Gilmer and Gilliam must show that a *federal* actor took action "without observance of procedure required by law." *Id.* § 706(2)(D).

Relying on *Costner v. Oklahoma Army Nat'l Guard*, 833 F.2d 905, 907 (10th Cir. 1987), and *NeSmith v. Fulton*, 615 F.2d 196, 199 (5th Cir.1980), Gilmer and Gilliam argue that the OAG, in administering the federal civilian workforce and the state National Guard, is *both* a state officer and a federal agency.

■ We agree that the OAG's personnel actions as supervisor over the federal civilian technicians are taken in the capacity of a federal agency. *See Costner*, 833 F.2d at 907; *Johnson v. Orr*, 776 F.2d 75, 77 (3rd Cir.1985); *NeSmith*, 615 F.2d at 199; *Chaudoin v. Atkinson*, 494 F.2d 1323, 1329 (3rd Cir.1974)). These cases, however, do not support the proposition that the OAG's actions in supervising members of the state National Guard are taken in the capacity of a federal agency.

The Supreme Court definitively ruled in *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976), that a federal civilian technician, terminated from his position on the basis of loss of state

National Guard membership, 32 U.S.C. § 709(e)(1), may not collaterally attack the underlying "cause" for his guard membership termination through § 709(e)(3).[3] *Dunlap*, 426 U.S. at 315–16, 96 S.Ct. at 2100–01. The Supreme Court held that Dunlap was not entitled to utilize the termination for cause provision because Dunlap's technician employment was validly terminated under section 709(e)(1), and there was nothing to suggest that section 709(e)(3) was intended to have any bearing on the reasons why one might lose membership in the state National Guard. *Id.* at 316, 96 S.Ct. at 2101.

■ As in *Dunlap*, the OAG discharged Gilmer and Gilliam from their federal civilian technician positions under section 709(e)(1). Although the OAG acted as a federal agency when he effected the discharge of Gilmer's and Gilliam's civilian technician employment, Gilmer and Gilliam are barred from using their discharge from federal employment to collaterally attack their loss of membership in ORARNG. Their resort to the APA, rather than to section 709(e)(3) is unavailing.

Next, Gilmer and Gilliam argue that, because the OAG was administering a federal regulation made applicable to members of ORARNG, the OAG's actions in removing Gilmer and Gilliam from ORARNG were taken in the capacity of a federal agency.

■ In *Zitser v. Walsh*, 352 F.Supp. 438 (D.Conn.1972), Zitser was dismissed from the state National Guard's Officer Candidates School ("OCS"). The decision to dismiss Zitser from OCS relied upon a federal regulation which was adopted by Connecticut and declared that appointments to the Connecticut National Guard must conform to federal standards for officers. *Id.* at 440–41 (citing Conn.Gen.Stat. § 27–49).

The *Zitser* court emphasized that the commanding officers acted under color of state law when they dismissed Zitser from OCS. *Id.*

Similarly, the weight control standards allegedly violated here are federal Army regulations, made applicable to Gilmer and Gilliam by Oregon statute and as members of ORARNG. Or.Rev.Stat. §§ 399.015, 399.045. The OAG administers the training of ORARNG members and enforces the training standards for members "'under color of (a) statute ... of (a) State.'" *Zitser*, 352 F.Supp. at 440 (quoting 42 U.S.C. § 1983). The adoption of federal training requirements for members of ORARNG by the Oregon Legislature was not a sham. We conclude the OAG's administration of the training requirements was pursuant to Oregon statute, and that the OAG did not function as a federal agency in removing Gilmer and Gilliam from ORARNG.

Finally, in *Perpich*, the Supreme Court explained that under the dual enlistment system, members of the state National Guard who are ordered into federal service with the National Guard of the United States lose their status as members of the State militia during their period of active federal duty. *Perpich*, 496 U.S. at 347, 110 S.Ct. at 24; *see also Gnagy v. United States*, 634 F.2d 574, 577, 225 Ct.Cl. 242 (1980) (ruling that members of the state National Guard, despite holding federal civilian technician positions, are not federal employees as long as the state National Guard unit was not in active federal service). However, under the "[a]uthority of training the militia, according to the discipline prescribed by Congress," *see* U.S. Const. art. I, § 8, cl. 16, members of the Guard are wearing their "state militia hat" during periods of training required pursuant to this grant of reserved power to the

---

**3.** Sections 709(e)(1) and (e)(3) provide:
(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—
   (1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned;

\* \* \* \* \* \*

(3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned;
32 U.S.C. § 709(e)(1), (3).

states. *Perpich,* 496 U.S. at 348, 110 S.Ct. at 2426.

In light of the foregoing authority, we hold that, because neither ORARNG nor the OAG was operating under federal control when Gilmer and Gilliam were terminated from ORARNG, the OAG's action was taken solely in the capacity of a state actor. Because the OAG was not a federal agency when he terminated Gilmer's and Gilliam's membership in ORARNG, Gilmer and Gilliam do not meet the requisite standards for stating a claim under the APA and their complaint is not justiciable under the *Mindes* test.

## CONCLUSION

We conclude that the OAG's authority to terminate Gilmer and Gilliam was exercised in his capacity solely as a state officer of ORARNG. He was fulfilling his role under state law which required that OR-ARNG members meet federal training requirements. Or.Rev.Stat. §§ 399.015, 399.-045. Therefore, Gilmer's and Gilliam's complaints under the federal APA are dismissed as non-justiciable.

The district court's judgment is AFFIRMED.