RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FURNISS HARKNESS,

　　　　　　　*Plaintiff-Appellant*,

*v.*

No. 12-5711

UNITED STATES OF AMERICA,

　　　　　　　*Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cv-02868—Robert H. Cleland, District Judge.

Argued: March 12, 2013

Decided and Filed: July 11, 2013

Before: KEITH, COLE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Arthur A. Schulcz, Sr., Vienna, Virginia, for Appellant. Matthew J.B. Lawrence, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Arthur A. Schulcz, Sr., Vienna, Virginia, for Appellant. Matthew J.B. Lawrence, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

COLE, Circuit Judge. This case arises from a longstanding dispute between Furniss Harkness and the United States Navy. Harkness is a reserve Commander in the Navy Chaplain Corps who was denied a promotion to the rank of Captain by an annual selection board. He petitioned the Secretary of the Navy to convene a special selection board to review that decision. When the Secretary declined his request, Harkness filed this suit in federal court. He complained, among other things, that the Navy's promotion

1

policies and procedures relating to chaplains violate the Establishment Clause.  The district court dismissed this claim for lack of subject matter jurisdiction based on a failure to exhaust administrative remedies as required by 10 U.S.C. § 14502(g) and subsequently denied his motion for reconsideration. On appeal, we must decide whether that statutory provision provides the exclusive avenue to judicial review for a reserve officer challenging his failed promotion on constitutional grounds.  Because we conclude that it does, we affirm.

I.

A.

Congress has long provided for chaplains to serve alongside other officers in the United States Navy.  The Chaplain Corps's principal mission is to accommodate the religious needs of members of the Navy and the Marines by offering religious services, counseling, and other means of spiritual support.  Chaplains also offer advice and instruction on ethical and moral matters to commanding officers when called upon.  *See generally In re England*, 375 F.3d 1169, 1171 (D.C. Cir. 2004) (describing the history and organization of the Chaplain Corps in considerable detail).

The defining feature of the Chaplain Corps is that each chaplain serves "as clergy or a professional representative of a particular religious denomination."  *Id.* (internal quotation marks and citation omitted).  Accordingly, a Navy chaplain must possess specialized theological qualifications as well as a current ecclesiastical endorsement from the denomination she represents.  The Navy classifies each chaplain according to the general category—or "faith group"—into which her denomination fits based on shared practices and beliefs.  *See id.* at 1171-72.  There are four such groups: Roman Catholic, liturgical Protestant, non-liturgical Protestant, and Special Worship.

In addition to their role as religious representatives, chaplains also serve as commissioned Naval officers.  Chaplains are thus subject to the same congressionally mandated promotion policies and procedures as all other officers.  *See* 10 U.S.C. § 611 *et seq.* (governing active duty officer promotions); *id.* § 14101 *et seq.* (governing reserve

officer promotions). The Navy's current personnel system utilizes annual selection boards to recommend officers for advancement in the ranks. *See id.* §§ 612, 14102. These boards must have "five or more officers," including at least one officer from the same "component" or "competitive category" as the officer up for promotion. *Id.* §§ 612(a), 14102(b). In other words, when a selection board considers a chaplain for promotion, one officer on the board must also be a chaplain. After deliberation, a selection board reports its recommendations to the Secretary of the Navy (the "Secretary"), who forwards them to the President for official promotion.

Chaplains who are passed over may challenge the decision of that year's selection board pursuant to an administrative review scheme, *see* 10 U.S.C. §§ 628, 14502, which is ultimately under fire here. These non-promoted officers must first petition the Secretary to convene a "special selection board" (or "SSB") for the purpose of determining whether they should have rightfully been recommended for promotion to the next rank. *Id.* §§ 628(h), 14502(g). The Secretary is instructed to weigh certain factors in granting or denying such a request, including whether an administrative error caused the original selection board never actually to consider the petitioning officer, *id.* §§ 628(a), 14502(a), or whether a material error caused the original board to mistakenly fail to recommend her for promotion, *id.* §§ 628(b), 14502(b). If the Secretary determines that an SSB is warranted, the SSB has the power to review an officer's personnel file as it would have appeared (in the case of administrative error) or should have appeared (in the case of material error) at the time of the first board in making a new recommendation. If the Secretary determines that an SSB is not warranted, the petitioning officer can finally seek review of that denial in federal court. *See id.* §§ 628(g), 14502(h) (instructing the federal courts to apply the familiar arbitrary-and-capricious standard to the Secretary's decision).

B.

Furniss Harkness is a chaplain in the Naval Reserve with a long history of advocating for reform. Harkness began his career as an active duty officer in the Chaplain Corps representing the Christian Church (Disciples of Christ), which the Navy

classifies as a non-liturgical Protestant denomination.  In 2000, he joined sixteen other non-liturgical Protestant chaplains in filing suit against the Navy, alleging systemic denominational prejudice.  *See Adair v. England*, 183 F. Supp. 2d 31, 38 (D.D.C. 2002). Harkness also claimed that the Navy discriminated against him personally for religious and retaliatory reasons on a number of occasions, including when its active duty selection boards failed to recommend him for promotion.  *Id.*  That suit is still pending. In the meantime, Harkness has shifted to reserve status.

In 2007, Harkness came up for promotion to the rank of Captain before a reserve officer selection board.  He was not recommended.  Not one to go quietly, Harkness alleged that the board "was not legally composed" and petitioned the Secretary to convene an SSB to reconsider him for promotion pursuant to 10 U.S.C. § 14502.  The Secretary denied his request.  Harkness also asked the Department of Defense Inspector General to investigate the board, but the investigation turned up no evidence of wrongdoing.

In 2010, Harkness filed this suit in federal court challenging the Secretary's decision to deny his request for an SSB.  His complaint set forth three claims.  First, Harkness alleged that the Secretary's decision was "arbitrary, capricious and contrary to law" because the selection board that failed to promote him was "illegally composed." Second, and most relevant here, Harkness alleged that "the Navy's current chaplain selection board procedures and composition violate the Establishment Clause" by allowing chaplains to rate other chaplains and thereby reproduce denominational preferences that favor Roman Catholics and liturgical Protestants.  Third, Harkness alleged that the Secretary "acted in bad faith by denying [his] SSB request."  Harkness also sought a preliminary injunction to prevent the Navy from convening its reserve officer selection board for 2012 until his challenges were adjudicated on the merits, but to no avail.  The first and third claims were eventually rendered moot when the Secretary

changed course and approved Harkness's request for an SSB to reconsider him for promotion to the rank of Captain.**1**

That leaves only the Establishment Clause claim relevant to the appeal before us. The district court dismissed the claim for lack of subject matter jurisdiction based on a failure to exhaust administrative remedies. The court held that Harkness was required to present the claim to the Secretary prior to seeking judicial review under the "extremely broad and encompassing" "exhaustion requirement" imposed by 10 U.S.C. § 14502(g) but had failed to do so. Harkness filed a motion for reconsideration in which he offered a number of new arguments, none of which swayed the district court.

Harkness now appeals both adverse judgments. We begin and end with the question of whether the district court properly determined that it lacked jurisdiction over his claim.

II.

We review de novo a district court's dismissal of any part of a complaint for lack of subject matter jurisdiction. *See Taylor v. Geithner*, 703 F.3d 328, 332 (6th Cir. 2013). In addition, "we review for an abuse of discretion a district court's denial of a motion for reconsideration." *See Indah v. U.S. Sec. & Exchange Comm'n*, 661 F.3d 914, 924 (6th Cir. 2011).

A.

It is axiomatic that the federal courts are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). One such statute is 28 U.S.C. § 1331, which empowers the district courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." In light of this general grant of jurisdiction, the appropriate question in cases such as ours "is not

---

**1**The SSB has since reconsidered the decision of the 2007 board and similarly declined to select Harkness for promotion. Harkness has requested a second SSB to review the decision of the first SSB.

whether Congress has specifically conferred jurisdiction, but whether it has taken it away." *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2141 (2012) (Alito, J., dissenting).

Congress often does so in two ways when administrative bodies are involved: by imposing exhaustion requirements and by imposing channeling requirements. As to the former, Congress has long directed parties to exhaust administrative remedies before seeking relief from the federal courts, and when it does so by statute, the requirement cannot be excused. *See McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992); *see also Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Congress has also removed certain claims from the general jurisdiction of the federal courts in order to channel them into a system of statutory review. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (noting that Congress can "delay[] judicial review of final agency actions" by "allocat[ing] initial review to an administrative body"). In some cases, including this one, the distinction between such requirements is difficult to locate, and is perhaps even illusory. But it matters little because the effect of a congressional command is the same—judicial review is precluded until the statutory conditions have been met. For this reason, we look first to the text of the statute, and, if it is clear, it determines the full scope of preclusion. Because the text is clear in this instance, our job is simply to interpret the words Congress has chosen and apply them to Harkness's claim, which we do in turn.

Congress has crafted an elaborate statutory review scheme for reserve officers seeking to challenge non-promotion decisions. *See* 10 U.S.C. § 14502. In so doing, it specified that these officers cannot short-circuit the scheme by resort to judicial review:

> **(g) Limitation of Other Jurisdiction.** — No official or court of the United States shall have power or jurisdiction —
>
> > (1) over any claim based in any way on the failure of an officer . . . to be selected for promotion by a selection board . . . until —

> (A) the claim has been referred to a special selection board by the Secretary concerned and acted upon by that board; or
>
> (B) the claim has been rejected by the Secretary without consideration by a special selection board . . . .

*Id.* § 14502(g)(1)(A)-(B) (emphasis in original). The text of this provision expressly takes away the jurisdiction that other statutes, including 28 U.S.C. § 1331, confer on the federal courts to hear promotion-based claims, at least temporarily. Congress thus established presentation to the Secretary as a predicate to judicial review for "any claim based in any way" on a reserve officer's failed promotion—leaving no alternative avenue of review. It is worth noting that Congress separately limited the "power or jurisdiction" of the federal courts to grant any relief on such claims "unless the officer . . . has been selected for promotion by a special selection board." *Id.* § 14502(g)(2). The most a court can do is remand a case to the Secretary to provide for fresh consideration by an SSB, *see id.* § 14502(h), the effect of which is to insulate the Naval promotion process from all but the most rudimentary judicial oversight.

Based on these textual considerations, it is clear to us that Congress established the scheme in § 14502 as an exclusive route to review for reserve officers who are not selected for promotion. *See Juffer v. Caldera*, 138 F. Supp. 2d 22, 24 (D.D.C. 2001) ("There is very little that can be added to clarify a legislative pronouncement already this clear."). Accordingly, without exception, a district court may not entertain a reserve officer's non-promotion claim until she has first presented it to the Secretary in accordance with the clear congressional command of § 14502(g). The remaining question is whether Harkness's constitutional claim falls within the scope of this exclusive scheme.

We conclude that it does. Harkness's claim is plainly "based in any way on [his] failure . . . to be selected for promotion by a selection board." As evidence, we need look no further than his standing to bring it. Harkness's claim arose because he suffered injury when the 2007 board allegedly failed to promote him for religious reasons and because he is likely to suffer the same injury when he is considered for promotion by

subsequent boards.[2]  *Cf. In re Navy Chaplaincy*, 697 F.3d 1171, 1175-77 (D.C. Cir. 2012) (holding that chaplains who were likely to be considered for promotion faced an imminent threat of future injury sufficient to establish Article III standing).  Put another way, the sole reason Harkness has a legitimate grievance at all is because of an actual and/or imminent failure to promote.  *See* 10 U.S.C. § 14502(g).  In response, Harkness has at times argued that his claim is aimed at future boards that have not yet failed to promote him and therefore is not subject to § 14502(g), the terms of which appear only to "appl[y] to past boards, not future ones."  But such semantics make no difference here.  At a minimum, he is still seeking relief from an imminent failed promotion.  Moreover, there is no obvious textual justification for distinguishing between actual and potential non-promotion decisions, nor does Harkness suggest one.  Because his constitutional claim is ultimately a vehicle by which he seeks to challenge a non-promotion decision, he is required to present it to the Secretary under § 14502(g).

Harkness raises a number of other arguments to evade the reach of the statutory review scheme, all of which miss the mark.  First, the review scheme does not carve out an exception for constitutional claims.  Section 14502(g) applies to a reserve officer who challenges his non-promotion on the ground that the relevant board's policies and procedures violated the Establishment Clause no less than it applies to a reserve officer who challenges his non-promotion on any other ground.  The plain language of § 14502(g) casts a wide net, covering "*any* claim based in *any* way" on a failed bid for promotion.  *Id.* (emphasis added); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, . . . 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting *Webster's Third New International Dictionary* 97 (1976))).  There is no indication, textual or otherwise, that Congress intended to treat constitutional claims differently than run-of-the-mill non-constitutional claims.  This is particularly true in light of the counterpart provision governing claims by active duty officers.  *See* 10 U.S.C. § 628.  While that provision also makes presentation to the Secretary a prerequisite for claims "based to any extent on the failure

---

[2]We note, however, that any challenge to the 2007 board is properly considered moot because the Secretary has since granted Harkness's request for an SSB.

of a person to be selected for promotion by a promotion board," *id.* § 628(h), it specifically exempts claims that call into question "the validity of any law, regulation, or policy relating to selection boards," *id.* § 628(i).  That § 14502(g) does not contain a similar exemption simply confirms our initial conclusion.  *Cf. In re Navy Chaplaincy*, 697 F.3d at 1175 (holding that subject matter jurisdiction existed over similar constitutional claims solely on the basis of § 628(i)).

Second, Harkness has given us no good reason to believe that his claim is not "of the type that Congress intended to be reviewed within this statutory structure."  *See Thunder Basin*, 510 U.S. at 212.  Rather than a claim "wholly collateral" to the applicable review scheme, *id.* (internal quotation marks omitted), Harkness challenges his failed promotion on the basis of an error the scheme specifically accounts for, *see* 10 U.S.C. § 14502(b) (addressing "material error"); SECNAVINST 1420.1B, ¶ 24(e)(3)(b) (noting that errors "depriv[ing] the officer concerned of a constitutional . . . right" are per se material).  Nor is submitting his constitutional claim to the Secretary necessarily a futile endeavor.  *Cf. Thunder Basin*, 510 U.S. at 213 (noting that federal jurisdiction over a claim might not be barred "where the petitioner [can make] a colorable showing that full . . . relief could not be obtained" from the agency).  The Secretary could attempt to rectify the problem by selecting future boards in a "constitutional" manner or by adopting an interpretation of the relevant policies that does not "violate" the Establishment Clause.  *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 24 (2000) (noting the advantages of "provid[ing] the agency the opportunity to reconsider its policies, interpretations, and regulations in light of . . . challenges," including constitutional ones).  The Secretary could push for new policies and procedures entirely.  *See id.*  Or, believing Harkness's constitutional claim unfounded, the Secretary could simply choose not to address it, which would free Harkness to pursue the claim in federal court.  *See* 10 U.S.C. § 14502(g)(1)(B).  This is precisely how the comprehensive review scheme created by § 14502 is supposed to function.

Finally, Harkness's argument that § 14502 does not apply to his claim because the 2007 board was "void ab initio" is a red herring. By it terms, § 14502 explicitly applies to selection boards that are allegedly tainted by administrative, legal, or other error. Allowing the Secretary to correct such error is the statutory review scheme's singular purpose.

For all of these reasons, we conclude that § 14502 creates a review scheme that is both exclusive and applicable to Harkness's constitutional claim.

B.

Our inquiry does not end there. Because the scheme still permits limited judicial review after a claim has been acted on by the Secretary, *see* 10 U.S.C. § 14502(h), we must determine whether Harkness properly traversed the route prescribed by § 14502(g). We conclude that he did not.

It is implicit in the notion of an exclusive statutory review scheme that a party must present his claims to the relevant administrative body. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (explaining that such schemes "protect[] administrative agency authority" and provide agencies "an opportunity to correct [their] own mistakes" (internal quotation marks and citations omitted)). Unfortunately, our case law is less than clear on what exactly it takes to satisfy this general requirement. Other circuits have adopted rules that differ at the margins but adhere to relatively uniform principles of notice and error correction. *See, e.g.*, *Massachusetts v. United States*, 522 F.3d 115, 132 (1st Cir. 2008) (finding that a petitioner must give the agency "a fair and full opportunity to adjudicate the claim" (internal quotation marks omitted)); *Forest Guardians v. United States Forest Serv.*, 495 F.3d 1162, 1170 (10th Cir. 2007) (finding that a petitioner "must present [the] claim . . . in sufficient detail to allow the agency to rectify the alleged violation"); *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (finding that a petitioner's presentation of the claim must be "adequate to put the [agency] on notice" (internal quotation marks omitted)). And we see no reason to depart from those principles in this instance. Thus, a party in Harkness's position must present his claims in a manner sufficient to give the relevant administrative body a meaningful opportunity

to respond appropriately should it choose to do so.  *See McCarthy*, 503 U.S. at 145 (noting that "an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court").

Here, Harkness has failed adequately to present his constitutional claim by any measure.  We look first to the language of his petition to the Secretary requesting an SSB.  The gist of his request is that "the regularly scheduled board . . . was not legally composed and, therefore, did not lawfully or fairly consider" him for promotion to the rank of Captain.  Harkness's petition made three specific allegations: (1) that the "board did not comply with the membership requirements" because it did not include an officer from his "competitive category"; (2) that one board member "was illegally serving" because the Navy promoted her in an illegal manner; and (3) that two board members "were biased against" him because of his involvement in ongoing litigation in which those board members were named as defendants.  Harkness summed up his allegations by stating that "the lack of a required . . . Chaplain Corps member and the presence of illegal, prejudiced members prevented [him from] being legally or fairly considered."

This language falls well short of giving the Secretary a meaningful opportunity to respond to Harkness's constitutional contention.  As the government correctly notes, the petition "focused exclusively on alleged irregularities in the staffing" of the 2007 board.  The reasons Harkness gave in support of his SSB request took aim at the board's decision in specific and narrow terms, none of which raise the possibility of broader Establishment Clause concerns.  While Harkness responds that his petition conveys "the essence of his constitutional challenge," even that weak assertion strains credulity.  The petition only obliquely refers to the Navy's promotion policies and procedures in complaining of biased board members, and it does not in any way allude to a potential Establishment Clause violation.  Such an omission cannot be attributed to the work of an unsophisticated non-lawyer.  As a party to the long-running *In re Navy Chaplaincy* litigation, *see, e.g.*, 850 F. Supp. 2d 86 (D.D.C. 2012), Harkness surely knew how to raise the same sort of constitutional claim here.  But he did not.  It would be unreasonable to expect the Secretary to divine from the petition what is at best an

implied challenge to the constitutionality of the 2007 board's underlying policies and procedures.  Because the Secretary did not have a meaningful opportunity to respond appropriately, Harkness has not properly presented his claim pursuant to the statutory review scheme.

Harkness argues in the alternative that he could not have included the constitutional claim in his petition in any event because he lacked corroborative statistical evidence at the time.  While it is true that he did not receive hard data regarding observable denominational preferences in Chaplain Corps promotion practices until after he requested the first SSB, that hardly changes the outcome here.  So holding does not implicitly "require[] Harkness to have been clairvoyant . . . when he requested an SSB," as he claims, it merely requires him to have a viable claim at all.  Assuming that such a claim did not materialize before his first petition was filed, Navy regulations left Harkness free to file a new petition with the Secretary based on the previously unavailable evidence.  *See* SECNAVINST 1420.1B, ¶ (24)(e)(5).  He never did prior to pursuing this appeal.

## C.

We hasten to note that our refusal to hear Harkness's constitutional claim does not mean he will never receive meaningful review.  This is not a situation in which the applicable statute purports to "deny any judicial forum for a colorable constitutional claim."  *Webster v. Doe*, 486 U.S. 592, 603 (1988).  Harkness remains free to press his claim in a petition to the Secretary and come back to federal court once his "claim has been referred to a special selection board . . . and acted upon by that board" or "rejected by the Secretary without consideration by a special selection board."  10 U.S.C. § 14502(g)(1).  We hold only that an exclusive statutory review scheme applies to his claim and that his failure to comply precludes federal court jurisdiction at this time.

## III.

For these reasons, we affirm.