RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0116p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FURNISS HARKNESS,

*Plaintiff-Appellant,*

*v.*

SECRETARY OF THE NAVY,

*Defendant-Appellee.*

No. 16-5396

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:13-cv-03003—Sheryl H. Lipman, District Judge.

Argued: January 31, 2017

Decided and Filed: May 31, 2017

Before: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Arthur A. Schulcz, SR., CHAPLAINS' COUNSEL, PLLC, Leesburg, Virginia, for Appellant. Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Arthur A. Schulcz, SR., CHAPLAINS' COUNSEL, PLLC, Leesburg, Virginia, for Appellant. Edward Himmelfarb, Marleigh D. Dover, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Retired Navy chaplain Furniss Harkness sued the Secretary of the Navy (Secretary), alleging that prior to his retirement, the Navy denied him multiple promotions and duty assignments in violation of the First Amendment. On this basis,

he claims that the Secretary's refusal to convene special selection boards (SSBs) to reconsider him for promotion was arbitrary, capricious, and contrary to law under 10 U.S.C. § 14502. The district court granted the Secretary's motion to dismiss and motion for summary judgment on all claims. For the reasons set forth below, we affirm.

## I.

## A.

The Chaplain Corps is a body of commissioned naval officers responsible for providing religious services to all members of the Navy and their families. Chaplains perform a bifurcated role, serving both as "clergy or . . . professional representative[s] of a particular religious denomination and as . . . commissioned naval officer[s]." *In re England*, 375 F.3d 1169, 1171 (D.C. Cir. 2004) (quoting OPNAVINST 1730.1, *Chaplains Manual* 1-2–1-3 (Dep't of the Navy Oct. 3, 1973)). Navy chaplains are divided into four faith-group categories: Roman Catholic, liturgical Protestant, non-liturgical Protestant, and Special Worship.

Like other officers, chaplains are subject to congressionally-mandated promotion procedures, including consideration by an annual promotion board. These boards must consist of "five or more officers," with "at least one officer" being from the same "competitive category" (e.g., the Chaplain Corps) as the officer being considered for promotion. 10 U.S.C. § 14102. Prior to 2003, chaplain promotion boards consisted of at least five members, one of whom was not a chaplain. Since 2003, chaplain promotion boards have been comprised of seven members: two chaplain officers—"nominated without regard to religious affiliation"—and five non-chaplain officers. SECNAVINST 1401.3A, Encl. (1), ¶ 1.c(1)(f). All members of the board must take an oath to perform their duties "without prejudice or partiality." 10 U.S.C. § 14103. The senior member of the board—normally the Chief of Chaplains or one of his deputies—may be appointed board president. SECNAVINST 1420.1B, ¶ 13.b. The board recommends for promotion those officers it "considers best qualified for promotion," giving due consideration to the Navy's needs for "officers with particular skills." 10 U.S.C. § 14108. These recommendations are reported to the Secretary, who then forwards them to the Secretary of Defense for transmittal to the President for approval. *Id.* §§ 14109–14111.

A chaplain who is denied a promotion may challenge the promotion board's decision pursuant to a statutory administrative-review scheme. *Id.* § 14502. The non-promoted officer must first petition the Secretary to convene an SSB to review the promotion board's decision. *Id.* § 14502(a)–(b). In deciding whether to grant an SSB, the Secretary considers whether the original promotion board's decision was contrary to law, suffered from administrative error, or suffered from a material error of fact. *Id.* If the Secretary determines that an SSB is warranted, an SSB is convened to review "the record of the officer . . . as that record, if corrected, would have appeared to the mandatory promotion board that considered the officer or former officer." *Id.* § 14502(b)(3). If the SSB concludes that a promotion was merited, the officer receives a retroactive promotion, as well as back pay. *Id.* § 14502(e). If the Secretary denies an SSB request, or if an SSB is convened and it denies a promotion, the petitioning officer may then seek review of that decision in federal court. *Id.* § 14502(g). If the reviewing court determines that an error has occurred, it must remand the case to the Secretary, who must provide for reconsideration of the officer by a new SSB. *Id.* § 14502(h).

B.

Furniss Harkness is a now-retired Navy Reserve Chaplain. He was commissioned as an officer in the Navy Chaplain Corps in 1987 and endorsed by a non-liturgical Christian church (Disciples of Christ). Harkness left active duty in 1995 and took reserve status. In 2000, Harkness joined sixteen other non-liturgical chaplains in filing suit against the Navy, alleging systemic denominational prejudice in its promotion procedures. *See Adair v. England*, 183 F. Supp. 2d 31, 38 (D.D.C. 2002). That suit, which has been appealed multiple times to the D.C. Circuit, is still pending in the United States District Court for the District of Columbia. *See In re Navy Chaplaincy*, 170 F. Supp. 3d 21 (D.D.C. 2016).

In 2007, Harkness was denied promotion to the rank of Captain by a reserve officer promotion board. Harkness petitioned the Secretary for an SSB, alleging that the board was illegally composed, but the petition was denied. Harkness filed suit in 2010, claiming that under 10 U.S.C. § 14502(h)(1), the Secretary's decision not to convene an SSB was arbitrary, capricious, and contrary to law. Harkness also sought a declaratory judgment that the Navy's chaplain promotion procedures violated the Establishment Clause. The district court dismissed

the constitutional claim for lack of jurisdiction, based on Harkness's failure to exhaust administrative remedies under 10 U.S.C. § 14502(g). This court affirmed, holding that "§ 14502 creates a review scheme that is both exclusive and applicable to Harkness's constitutional claim." *Harkness v. United States*, 727 F.3d 465, 472 (6th Cir. 2013).

Harkness's illegal-composition claim was eventually rendered moot when, in 2012, the Secretary agreed to convene an SSB to reconsider the 2007 promotion board's decision. This SSB did not select Harkness for promotion (the "initial 2012 SSB"). In response, Harkness petitioned the Secretary for a second SSB to review the initial SSB's decision (the "2012 SSB request"), which was denied due to statutory limitations for granting SSBs.

In 2013, Harkness was once again considered for and denied promotion by a reserve officer promotion board (the "2013 promotion board"). Harkness petitioned the Secretary for an SSB to review this decision (the "2013 SSB request"), arguing that reconsideration was necessary because the 2013 promotion board violated both Navy regulations and the Establishment Clause. Harkness's constitutional claim was twofold. First, relying on statistical evidence, he alleged that the current procedures employed by promotion boards produced denominational preferences in promotion decisions. Second, he challenged the delegation of governmental authority to chaplains serving on promotion boards without effective guarantees that the power would be exercised in a neutral, secular manner. The Secretary denied Harkness's request, reasoning that the 2013 promotion board was consistent with both Navy regulations and the Establishment Clause.

Harkness filed suit in December 2013. He first claimed that, because both the 2012 SSB and the 2013 promotion board were convened in violation of Navy regulations and the Establishment Clause, the Secretary's denial of both Harkness's 2012 SSB request and his 2013 SSB request was arbitrary, capricious, and contrary to law under 10 U.S.C. § 14502(h)(1). Additionally, Harkness alleged that he was unlawfully denied various duty assignments during his Navy career in retaliation for his past litigiousness against the Navy.[1]

---

[1]Harkness raised, and the district court addressed, various other claims that are not before this court on appeal.

The Secretary moved to dismiss Harkness's First Amendment retaliation claim for lack of jurisdiction and moved for summary judgment on Harkness's remaining claims. In response, Harkness moved for partial summary judgment on his constitutional challenge to the Navy's promotion procedures, and also moved to stay further proceedings until discovery could be conducted. The district court granted the Secretary's motions to dismiss and for summary judgment and denied Harkness's motions. Harkness filed this timely appeal.

II.

A.

Harkness claims that he was denied various duty assignments in retaliation for his past litigiousness against the Navy—namely, a recorder position on promotion selection boards, an assignment working on the 2010 National Boy Scout Jamboree, a training position at Naval Region Europe, and various APPLY board positions. He alleges that the denial of these assignments violated the First Amendment and hindered his career advancement and promotion opportunities. The district court dismissed this claim as non-justiciable, a decision we review *de novo*. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 278–79 (6th Cir. 1997) (citation omitted).

B.

Although some military personnel decisions are indeed reviewable, *see Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987) (promotion decision); *Dunlap v. State of Tenn.*, 514 F.2d 130, 133 (6th Cir. 1975) (denial of re-enlistment), *rev'd on other grounds, Tennessee v. Dunlap*, 426 U.S. 312 (1976), courts are generally reluctant to review claims involving military duty assignments, *see Orloff v. Willoughby*, 345 U.S. 83, 92–93 (1953); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978) (listing cases). Several justifications for this rule exist: lack of expertise, deference to the unique role of the military in our constitutional structure, and the practical difficulties that would arise if every military duty assignment was open to judicial review. *See, e.g., Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013); *Sebra v. Neville*, 801 F.2d 1135, 1141 (9th Cir. 1986); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir. 1985).

In the seminal case of *Orloff v. Willoughby*, a doctor conscripted into the army challenged, among other things, his duty assignment as a medical laboratory technician. 345 U.S. at 85–86.  The Court found that, although the doctor was required to receive assignments within the general medical field, the specific duties assigned to him within this field were beyond the Court's power to review. *Id.* at 92–94 ("[W]e are convinced that it is not within the power of this Court . . . to determine whether specific assignments to duty fall within the basic classification of petitioner.").

Although Harkness accepts *Orloff*'s general holding, he nevertheless asserts that claims for equitable relief regarding duty assignments are reviewable when they involve the deprivation of constitutional rights.  To support this proposition, he cites *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).  In *Mindes*, the Fifth Circuit, recognizing that *Orloff* did not involve a constitutional claim, articulated a test for determining the reviewability of a particular military decision.  As a threshold matter, the *Mindes* court held that an internal military decision is unreviewable unless two initial requirements are satisfied: "(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Id.* at 201.  If the plaintiff meets both prerequisites, then four factors must be weighed to determine justiciability: the nature and strength of the plaintiff's challenge; the potential injury to the plaintiff of withholding review; the degree of anticipated interference with the military function; and the extent to which military expertise or discretion is involved.  *Id.* at 201–02.  Although we have never explicitly endorsed the *Mindes* test, other circuits have adopted this test for determining the justiciability of claims involving internal military decisions.  *See, e.g.*, *Williams v. Wilson*, 762 F.2d 357, 359–60 (4th Cir. 1985); *Schlanger*, 586 F.2d at 671.  *Mindes* provides a proper framework for analyzing the justiciability of Harkness's First Amendment retaliation claim regarding the denial of duty assignments.[2]

---

[2]Although *Mindes* contemplated potential review of non-constitutional claims involving internal military decisions, *see Mindes*, 453 F.2d at 201, we express no view as to whether the *Mindes* framework should apply to non-constitutional claims.  Thus, we do not decide whether *Orloff* continues to categorically bar review of non-constitutional claims involving military duty assignments in this circuit.

Under this framework, Harkness's claim was non-justiciable.[3]   As an initial matter, Harkness's claim is tenuous at best.  He largely eschews specifics regarding the denial of his duty assignments (for example, the years the denials took place, the decision-makers involved, the knowledge these decision-makers had of his past litigiousness, or his qualifications for each assignment), and instead merely alleges in conclusory fashion that he was denied various duty assignments and that it was because of his prior claims against the Navy.  The lack of detail and clarity in his argument cuts against a finding of justiciability under *Mindes*.  453 F.2d at 201.

Harkness fares no better under *Mindes*'s second factor—the potential injury if review is withheld.  Compared to the harm suffered when a soldier is wrongfully sent into combat or unlawfully discharged, for instance, the harm inflicted by the denial of a routine duty assignment is negligible.  *See Schlanger*, 586 F.2d at 671–72.  This is especially so where appointment to the positions was, as here, entirely discretionary.  *See, e.g.*, BUPERSINST 1401.5B, ¶ 5; FY 2015 APPLY Board Convening Order, App'x A, ¶ e.  Further, it is unclear what remedy Harkness could obtain through judicial review.  Harkness does not seek damages.  And since he is now retired, he can no longer be appointed to these positions, nor will the absence of these assignments on his record affect future promotion opportunities.  Thus, there is no injury—past, present, or future—that could be obviated by judicial review of Harkness's claim.

The third and fourth *Mindes* factors also militate against reviewability.  Duty assignments lie at the heart of military expertise and discretion, and we are "wary of intruding upon that sphere of military decision-making."  *Sebra*, 801 F.2d at 1142.  Subjecting every such assignment to judicial review would have a deleterious effect on the military's performance of its vital operations and would impede its overall preparedness.  *Cf. Mindes*, 453 F.2d at 199; *see also Christofferson v. Wash. State Air Nat'l Guard*, 855 F.2d 1437, 1444–45 (9th Cir. 1988).  Accordingly, Harkness's First Amendment retaliation claim was non-justiciable under *Mindes*.

III.

Harkness next challenges a pair of decisions by the Secretary refusing to convene an SSB to reconsider Harkness for a promotion.  When a district court upholds an agency's final decision

---

[3]There is no dispute that Harkness has met *Mindes*'s two threshold requirements.

on summary judgment under the Administrative Procedure Act (APA), we "review the district court's summary judgment decision de novo, while reviewing the agency's decision under the arbitrary and capricious standard." *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) (citation omitted). Although the APA does not apply in this case, § 14502(h) provides comparable standards for reviewing the propriety of the Secretary's decisions. Specifically, we must ask whether the Secretary's decisions were "arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law." 10 U.S.C. § 14502(h)(1). An agency's decision "is arbitrary and capricious if there is no evidence to support the decision, or it is based on an improper understanding of the law." *Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506, 1999 WL 701924, at *2 (6th Cir. 1999) (table disposition) (citation omitted).

## A.

Harkness asserts that the Secretary's denial of his 2012 SSB request was arbitrary, capricious, and contrary to law under § 14502(h)(1) because his initial 2012 SSB—the one convened to review the 2007 promotion board's decision—violated the Establishment Clause.[4] We need not reach the constitutional question in connection with the 2012 SSB request, however, because the Secretary did not have statutory authority to convene a second SSB to review the actions of the initial 2012 SSB. Accordingly, his decision was not arbitrary, capricious, or contrary to law.

Harkness received an initial SSB on August 9, 2012, to review the 2007 promotion board's decision to deny him a promotion. After consideration, the SSB did not select Harkness for a promotion. Instead of seeking review of this decision in federal court under § 14502(h)(2), Harkness petitioned the Secretary for a second SSB to review the initial SSB's decision. As the Secretary stated in his decision denying Harkness's 2012 SSB request, however, he had no statutory or regulatory authority to grant Harkness's request. Section 14502(b) authorizes the Secretary to convene an SSB only in cases where an officer was denied a promotion by a *promotion board*, not another SSB. *See* § 14502(b) (providing that the Secretary may convene an SSB "[i]n the case of an officer or former officer who was eligible for promotion and was

---

[4]Although Harkness provided many reasons why his initial 2012 SSB was invalid in his 2012 SSB request to the Secretary, he offers only the Establishment Clause claim on appeal.

considered for selection for promotion . . . by a *mandatory promotion board* convened under section 14101(a) of this title but was not selected"). Navy policy similarly limits the Secretary's ability to grant SSBs to situations where a "promotion selection board" acted "contrary to law," committed "material error," or "did not have material information before it." SECNAVINST 1420.1B, ¶ 24(e). Accordingly, because the Secretary lacked legal authority to grant Harkness's 2012 SSB request, his denial of that request was not arbitrary, capricious, or contrary to law under § 14502(h)(1).

B.

Harkness also claims that the denial of his 2013 SSB request was arbitrary, capricious, and contrary to law under § 14502(h)(1) for two reasons. First, he claims that 2013 promotion board member Captain William Wildhack had "duties related to officer community management," which allegedly barred him from board membership. Second, Harkness alleges that the 2013 promotion board violated the Establishment Clause.[5] Harkness claims that failing to recognize these flaws in the 2013 promotion board necessitates a finding that the Secretary's denial of his 2013 SSB request was arbitrary, capricious, and contrary to law. We address each argument in turn.

1.

We note, initially, that Harkness's claim regarding Captain Wildhack was not presented to the Secretary in Harkness's 2013 SSB request, nor was it in his complaint filed with the district court. In his SSB request, Harkness alleged that Wildhack was barred from board participation due only to Wildhack's status as a "detailer," not because he had "duties related to officer community management." Because Harkness has not administratively exhausted this claim, we lack jurisdiction to entertain it. *See Harkness*, 727 F.3d at 470.

---

[5]The Secretary asks us to characterize Harkness's Establishment Clause claim as one of religious discrimination under the Equal Protection Clause. But, because Harkness bases his challenge explicitly on the Establishment Clause, we examine the merits of his claim under only that constitutional provision.

2.

Harkness's Establishment Clause challenge also falls short.[6] Although, at times, he fuses the two, Harkness's claim rests on two distinct theories: (1) that the promotion board procedures result in denominational preferences in chaplain-promotion decisions; and (2) that the Navy impermissibly delegates, in the form of promotion decisions, governmental authority to religious entities without effective guarantees that such authority will be exercised in a neutral, secular manner.

We engage in a two-step inquiry when analyzing Establishment Clause claims. First, if the challenged government practice prefers one religion over another, we apply strict scrutiny in adjudging its constitutionality. *Larson v. Valente*, 456 U.S. 228, 246 (1982). Second, if the challenged practice does not differentiate among religions, we apply the three-pronged test laid out in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

As an initial matter, the parties disagree on what is required to trigger strict scrutiny under *Larson*. Harkness claims that only a "suggestion of preference" is required to trigger strict scrutiny, citing *County of Allegheny v. ACLU*, 492 U.S. 573, 608–09 (1989), for support. The Secretary disagrees, arguing that strict scrutiny applies only when the law *facially* prefers one religion over another. Because the Secretary's approach is more consistent with both Supreme Court and our precedent, we require a facial preference among religions to trigger strict

---

[6]Although Harkness appears to frame his Establishment Clause claim as a general challenge to the Navy's chaplain promotion procedures in both his complaint and appellate brief, that is the improper framework. Because Harkness is now retired, he lacks standing to challenge the constitutionality of any future promotion boards, nor does § 14502 provide him that option. *See Harkness*, 727 F.3d at 471. Instead, he can challenge only the constitutionality of past promotion boards—and even then only the 2012 SSB and the 2013 promotion board that denied him a promotion. This is so because the proper mechanism through which a naval reserve officer may challenge a constitutional error in a promotion board is to petition the Secretary to convene an SSB under § 14502(b). In fact, Navy regulations provide for exactly this type of situation. SECNAVINST 1420.1B, ¶ 24(e)(3)(b) (stating that errors "depriv[ing] the officer concerned of a constitutional . . . right" are per se material). If the Secretary finds that no constitutional error occurred and denies the officer's SSB request, the officer is then free to seek review of that decision in federal court, which must review it under the standards articulated in § 14502(h)(1): asking whether the Secretary's decision was arbitrary, capricious, or otherwise contrary to law. Naturally, a Secretary's refusal to convene an SSB to review an unconstitutional promotion board would be "contrary to law."

Accordingly, Harkness's Establishment Clause claim is not a standalone claim, but rather another basis on which Harkness may challenge the Secretary's denial of his 2012 and 2013 SSB request. And, like all other claims brought under § 14502(h), it is reviewed on the administrative record. *See Harkness*, 727 F.3d at 472; *infra* Part IV.B.

scrutiny. *See Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 695 (1989) (noting that "*Larson* teaches that, when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions"); *Gillette v. United States*, 401 U.S. 437, 450 (1971) ("The critical weakness of petitioners' establishment claim arises from the fact that [the statute], *on its face*, simply does not discriminate on the basis of religious affiliation." (emphasis added)); *Wilson v. N.L.R.B.*, 920 F.2d 1282, 1287 (6th Cir. 1990) ("When a law facially differentiates among religions, it is subject to strict scrutiny."); *see also In re Navy Chaplaincy*, 738 F.3d at 430 (analyzing the same procedures at issue here and concluding that, "[a]s the challenged policies are facially neutral, *Larson* doesn't trigger strict scrutiny").

Judged against this standard, strict scrutiny does not apply here. Chaplain promotion board members are nominated without regard to their religious affiliation, *see* SECNAVINST 1401.3A, Encl. (1), ¶ 1.c(1)(f), and each board member must take an oath to perform his duties "without prejudice or partiality," 10 U.S.C. § 14103. Additionally, the board is instructed to recommend for promotion those officers it "considers best qualified for promotion," not those adhering to a particular religious denomination. 10 U.S.C. § 14108. Accordingly, because the promotion procedures do not facially prefer one religion over another, we apply the *Lemon* test.

In order to pass constitutional muster under *Lemon*, the challenged government practice must: (1) have a "secular legislative purpose," (2) have a "principal or primary effect . . . that neither advances nor inhibits religion," and (3) not result in "excessive government entanglement with religion." 403 U.S. at 612–13; *see Wilson*, 920 F.2d at 1287. Harkness does not challenge the Navy's promotion procedures under the first or third prong of *Lemon*. Thus, we must determine only whether the Navy's promotion procedures have the "primary effect" of advancing religion, or, as reformulated by this court, whether they have "the purpose or effect of endorsing religion." *A.C.L.U. v. DeWeese*, 633 F.3d 424, 434 (6th Cir. 2011) (citation omitted). This requires asking "whether a reasonable observer acquainted with the text, history, and implementation" of the challenged procedures would view them as a government endorsement of religion. *Id.*

Harkness identifies several promotion board procedures that he claims facilitate the use of religion in promotion decisions: the general presence of chaplains on promotion boards; the

anonymous voting process; the small number of board members, allowing one member to vote "zero" and effectively destroy a candidate's chances for promotion; the use of the Chief of Chaplains ("Chief") or one of his deputies as board president, resulting in improper influence over voting decisions; and permitting one board member to brief the other members on a candidate's record instead of having each board member individually review such record.

A reasonable observer reviewing these procedures—with knowledge of their text, history, and implementation—would not, without more, infer government endorsement of religion. First, at least one chaplain is required by statute to serve on the chaplain promotion boards because they are officers belonging to the same "competitive category" as the officer being considered for promotion. *See* 10 U.S.C. § 14102(c). Second, any denominational influence the Chief may have on the voting of other board members is actually counteracted by the anonymous voting process, which ensures each member may vote based on his own conscious and free from any undue influence. Third, Harkness has not alleged that the chaplain promotion board's size, method of voting, or method of reviewing a candidate's record differs from the promotion boards considering other officers.[7] If the Navy employs these procedures for other promotion boards, then its use of them for chaplain promotion boards cannot be perceived as an effort to endorse religion. Therefore, as the challenged policies themselves are facially neutral, Harkness is left arguing, in effect, that a "reasonable observer, contemplating the *results* of the policies (as gathered in [Harkness's] statistical evidence), would infer that the government had as a practical matter endorsed" the use of religion in chaplain-promotion decisions. *In re Navy Chaplaincy*, 738 F.3d at 430 (emphasis added).

Harkness cites two statistical studies to support this contention. From these studies, he relies primarily on two statistics: (1) from 1981–2000, a 10% advantage in promotion to Commander for officers of the same denomination as the Chief (83% - 73%); and (2) from 1981–2000, a 28% advantage in promotion to Captain for officers of the same denomination as the Chief (78% - 50%). We agree with the D.C. Circuit that, even "[a]ssuming arguendo that it is proper to see the 'reasonable observer' as a hypothetical person reviewing an array of statistics

---

[7]The Secretary found that the size and composition of Harkness's promotion board was comparable to the promotion boards for other Navy officers.

. . . , the figures in this case would not lead him to perceive endorsement." *In re Navy Chaplaincy*, 738 F.3d at 431.

First, the data on which Harkness primarily relies covers a period that ended fifteen years ago, when the composition of promotion boards was different from the 2013 board that considered Harkness. For example, promotion boards prior to 2003 consisted of five or more members, only one of which was *not* a chaplain. *Id.* at 427. Harkness's board, conversely, consisted of seven members, only two of which *were* chaplains. SECNAVINST 1401.3A, Encl. (1), ¶ 1.c(1)(f). Any denominational preferences that existed in pre-2003 promotion boards, therefore, have largely been mitigated by the current procedures in which non-chaplain board members far outnumber chaplain members. It would thus be unreasonable for an observer to infer that, because religious affiliation may have played a role in promotion decisions for boards convened more than fifteen years ago, religion was also a factor in the 2013 promotion board's decision not to promote Harkness.

Second, even assuming that Harkness's data is relevant to the 2013 promotion board's decision, it suffers from another fatal flaw. As the D.C. Circuit noted, even if Harkness's data is statistically significant, that means only that the disparity in promotion decisions was not "due to chance." *In re Navy Chaplaincy*, 738 F.3d at 431. And because Harkness's statistical studies fail to control for other confounding factors—such as, promotion ratings, education, or leadership skills[8]—we, as well as the reasonable observer, are left still searching for the actual cause of the statistical discrepancy in Harkness's data. *See id.* From this ambiguity one could not reasonably perceive government endorsement of religion under *Lemon*. *Cf. Parra-Morela v. Holder*, 504 F. App'x 461, 462 (6th Cir. 2012) (noting that "administrative agencies are entitled to a presumption that they 'act properly and according to law'" absent "clear evidence to the contrary" (quoting *FCC v. Schreiber*, 381 U.S. 279, 296 (1965))).

Harkness disagrees. He cites a number of Title VII cases for the proposition that a statistical analysis that fails to account for factors other than discrimination can still be probative of discrimination, especially when considered in light of other evidence of discrimination in the

---

[8]Although Harkness claims that these factors are irrelevant in promotion decisions, the 2013 promotion board that considered Harkness was required to consider each of these factors in making its promotion decision.

record. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986); *Phillips v. Cohen*, 400 F.3d 388, 400–01 (6th Cir. 2005); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 908–09 (6th Cir. 1991). But that is exactly what distinguishes these cases from Harkness's: here there is no other evidence of religious discrimination in the record. To be sure, Harkness points to other evidence of discrimination he alleges the district court ignored, such as Inspector General investigations, anecdotal evidence from other Navy officers, and statistical studies covering more recent promotion boards. But this evidence was not presented to the Secretary, nor is it part of the administrative record. And, even assuming Harkness lacked access to this evidence prior to filing his 2013 SSB request, he has no excuse: "Navy regulations left Harkness free to file a new petition with the Secretary based on the previously unavailable evidence." *Harkness*, 727 F.3d at 473 (citing SECNAVINST 1420.1B, ¶ (24)(e)(5)). Because he did not do so, the district court properly ignored this evidence and found Harkness's statistical data insufficient to show endorsement under *Lemon*.

Perhaps recognizing the weakness of his position, Harkness proffers another reason why his 2013 promotion board violated the Establishment Clause: it was an impermissible delegation of governmental authority to a religious entity without effective guarantees that such authority would be exercised in a neutral, secular manner. In support of this claim, Harkness cites *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116 (1982), and *Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687 (1994). In *Larkin*, the Supreme Court struck down a Massachusetts statute giving churches an effective veto power over the issuance of liquor licenses to establishments within 500 feet of their premises. 459 U.S. at 123. The Court found that the statute violated the Establishment Clause because the power delegated to the churches was "standardless, calling for no reasons, findings, or reasoned conclusions" and because there were no "effective means of guaranteeing that the delegated power w[ould] be used exclusively for secular, neutral, nonideological purposes." *Id.* at 125 (citation omitted). In *Grumet*, the Supreme Court invalidated on Establishment Clause grounds a New York statute creating a special school district for a Jewish sect. 512 U.S. at 702. In doing so, the court noted that "[w]here 'fusion' is an issue, the difference lies in the distinction between a government's purposeful delegation on the basis of religion and a delegation on principles neutral to religion, to individuals whose religious identities are incidental to their receipt of civic authority." *Id.* at

699.  Judged against these precedents, the Navy's chaplain promotion procedures do not violate the Establishment Clause.

First, unlike the statutory scheme in *Larkin*, Congress and the Secretary have "articulated secular, neutral standards to guide selection board members in evaluating candidates for promotion." *In re Navy Chaplaincy*, 697 F.3d at 1179.  Each promotion board member must take an oath to perform their duties "without prejudice or partiality." 10 U.S.C. § 14103.  Board members are required by statute to recommend those officers it "considers best qualified for promotion," 10 U.S.C. § 14108, and the Secretary must provide those members with "guidance relating to the needs of the Navy . . . for officers with particular skills in each competitive category, and other information and guidelines as necessary to enable the board to perform its functions properly," SECNAVINST 1420.1B, ¶ 13.d(2).  Moreover, unlike the plenary veto power given to the churches in *Larkin*, "here the two chaplains on the selection boards share decision-making authority with five others, and the board's promotion decisions are subject to further review by the Secretary of the Navy and the Secretary of Defense." *In re Navy Chaplaincy*, 697 F.3d at 1179; *see* 10 U.S.C. §§ 14110–14111.  Thus, effective measures exist to ensure that "the delegated power [is] used exclusively for secular, neutral, nonideological purposes." *Larkin*, 459 U.S. at 125.

Second, unlike the delegation to the Jewish sect in *Grumet*, the delegation of power to the chaplain promotion boards is made "on principles neutral to religion, to individuals whose religious identities are incidental to their receipt of civic authority." 512 U.S. at 699.  The chaplain board members are appointed "without regard to religious affiliation." SECNAVINST 1401.3A, Encl. (1), ¶ 1.c(1)(f).  They serve on promotion boards solely because they are Navy officers from the same "competitive category" as the officer being considered for promotion. 10 U.S.C. § 14102.  Thus, any governmental authority chaplains exercise while serving on a promotion board is employed not in their capacity as a religious representative, but as a Navy officer evaluating the secular qualifications of their fellow officer. *Cf. Mistretta v. United States*, 488 U.S. 361, 404 (1989) (noting, in discussing Article III judges' appointment to the Sentencing Commission, "the Constitution, at least as a *per se* matter, does not forbid judges to wear two

hats; it merely forbids them to wear both hats at the same time"). The delegation of this power does not violate the Establishment Clause.

Because the 2013 promotion board was not constitutionally infirm, the Secretary's denial of Harkness's 2013 SSB request was not arbitrary, capricious, or otherwise contrary to law under § 14502(h)(1). Accordingly, we affirm the district court on this claim.

IV.

A.

Finally, Harkness argues that the district court erred in not permitting discovery beyond the administrative record. "'[A] district court's refusal to supplement the administrative record' is akin to 'a district court's denial of discovery'" and thus is reviewed on appeal "for an abuse of discretion." *Sierra Club v. Slater*, 120 F.3d 623, 639 (6th Cir. 1997) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (citation omitted).

B.

Harkness concedes that review of the Secretary's decisions under § 14502(h)(1) is generally limited to the administrative record, but claims that an exception applies here. Specifically, Harkness argues that supplementation of the record is necessary because the Secretary "failed to consider all appropriate factors" and because the "original record was tainted by fraud."[9] CA6 R. 17, at 65–66.

We have stated, in the context of APA review, that supplementation of the administrative record is appropriate where "an agency deliberately or negligently excludes certain documents,

---

[9]Harkness also argues that discovery was necessary because "[c]onstitutional issues cannot be decided on the administrative record." CA6 R. 17, at 62. This argument lacks merit. First, there is no general bar to reviewing constitutional claims on an administrative record. *See* 5 U.S.C. § 706(2)(B). Second, because Harkness's retaliation claim is non-justiciable, discovery was unnecessary on that claim. Third, for reasons discussed in note 6, *supra*, Harkness's Establishment Clause claim is properly reviewed on the administrative record.

or when the court needs certain 'background information in order to determine whether the agency considered all of the relevant factors.'" *Slater*, 120 F.3d at 638 (quoting *Ludwig*, 82 F.3d at 1095). There must also be a "strong showing of bad faith." *Id.* (internal quotation marks and citation omitted). Harkness has not made the requisite showing here.

Harkness reasserts his claim that the Secretary failed to consider that Captain Wildhack had "duties related to officer community management," which barred him from 2013 promotion board membership. CA6 R. 17, at 63–64. But this is not an argument that the record is somehow deficient; instead, this is a claim that goes to the merits of the Secretary's decision under § 14502(h). And, as discussed above, there is a good reason why the Secretary failed to consider this claim: Harkness did not raise it in his 2013 SSB request. Not having done so, he is barred from raising the claim now. *See Harkness*, 727 F.3d at 470 (noting that a "court may not entertain a reserve officer's non-promotion claim until [he] has first presented it to the Secretary").

Harkness also argues that the Secretary failed to consider two pieces of evidence related to his non-promotion claims: (1) a declaration by a retired Navy chaplain detailing Navy leadership's pervasive hostility against Harkness; and (2) an anonymous witness's statement that he overheard two SSB board members state they were present at Harkness's hearing "to defend the interests" of the Secretary. CA6 R. 17, at 64–67. But the Secretary did not act in bad faith in refusing to consider this evidence, nor did the Secretary deliberately or negligently exclude this information from the record. *See Slater*, 120 F.3d at 638. Harkness simply failed to include this evidence in his SSB petitions. Allowing Harkness to present this evidence in the first instance to the district court, without any wrongdoing by the Secretary, would circumvent § 14502(g)'s explicit exhaustion requirement. *See Harkness*, 727 F.3d at 470. Thus, because Harkness has provided no justification for supplementing the administrative record in this case, the district court did not abuse its discretion in denying discovery.

V.

For the reasons stated above, we affirm the judgment of the district court.